James GARZA, Appellant

v.

The STATE of Texas.

No. PD–1596–12.

Court of Criminal Appeals of Texas.

June 11, 2014.

---

Edward F. Shaughnessy III, San Antonio, TX, for Appellant.

Jay Brandon, Assistant District Attorney, San Antonio, LISA C. MCMINN, STATE'S ATTORNEY, AUSTIN, TX, for the State.

## *OPINION*

KEASLER, J., delivered the opinion of the Court, in which MEYERS, PRICE, WOMACK, and HERVEY, JJ., join.

On appeal, James Garza contested the imposition of his life-without-parole sentence arguing that, because he was a juvenile, the sentence violated his Eighth Amendment rights as defined by the United States Supreme Court's decision in *Miller v. Alabama.* The Fourth Court of Appeals refused to review his claim and held that, by failing to lodge an objection in the trial court, Garza has forfeited this claim on appeal. We reverse the court of appeals' decision because it conflicts with this Court's subsequently delivered opinion in *Ex parte Maxwell.*

In November 2011, a jury convicted James Garza of capital murder for his involvement in the stabbing death of the complainant for the purpose of stealing the complainant's car. The State waived the death penalty because Garza was a juvenile at the time of the capital murder.

Immediately upon conviction, Garza was sentenced to life without parole pursuant to Texas Penal Code § 12.31(b), as it existed at the time. No sentencing hearing was conducted, and "[n]o objection was voiced to the procedure employed or to the imposition of the sentence imposed."[1]

In a single issue on appeal, Garza claimed that his life-without-parole sentence violated the Eight Amendment's prohibition against cruel and unusual punishment because his status as a juvenile bars the punishment imposed. Garza cited the United States Supreme Court's 2012 opinion in *Miller v. Alabama*[2] in support of his claim. The court of appeals affirmed the trial court's judgment without addressing the merits of Garza's claim because it found that the issue had not been preserved for review.[3]

■ Garza asserts that the court of appeals erred by deciding the procedural-default issue under general preservation-of-error principles without considering whether Garza's claim must be preserved in light of our opinion in *Marin v. State*.[4] Texas Rule of Appellate Procedure 33.1 establishes the general requirement that a contemporaneous objection must be made to preserve error for appeal.[5] But in *Ma-*

*rin*, we held that the general preservation requirement does not apply to all claims. There, we separated the rights of a defendant into three categories:

● The first category of rights are those that are "widely considered so fundamental to the proper functioning of our adjudicatory process ... that they cannot be forfeited ... by inaction alone."[6] These are considered "absolute rights."[7]

● The second category of rights is comprised of rights that are "not forfeitable"—they cannot be surrendered by mere inaction, but are "waivable" if the waiver is affirmatively, plainly, freely, and intelligently made.[8] The trial judge has an independent duty to implement these rights absent any request unless there is an effective express waiver.[9]

● Finally, the third category of rights are "forfeitable" and must be requested by the litigant.[10] Many rights of the criminal defendant, including some constitutional rights, are in this category and can be forfeited by inaction.[11]

Rule 33.1's preservation requirements do not apply to rights falling within the first two categories.[12] Barring these two narrow exceptions, all errors—even constitutional errors—may be forfeited on appeal

---

1. Appellant's Br. 4.

2. —— U.S. ——, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012) (holding that the mandatory imposition of a life-without-parole sentence upon a juvenile is unconstitutional).

3. *Garza v. State*, No. 04–11–00891–CR, 2012 WL 5236048, at *1 (Tex.App.-San Antonio Oct. 24, 2012) (mem. op, not designated for publication).

4. 851 S.W.2d 275 (Tex.Crim.App.1993), *overruled on other grounds by Cain v. State*, 947 S.W.2d 262 (Tex.Crim.App.1997).

5. Tex.R.App. Pro. 33.1(a) (requiring that, as a prerequisite to presenting a complaint on appeal, the record show a complaint was made

to the trial court alleging specific grounds for the objection that comply with the Rules of Evidence and that the trial court ruled, or refused to rule on, the objection.).

6. *Marin*, 851 S.W.2d at 278.

7. *Id.* at 279.

8. *Id.* at 279–80.

9. *Id.*

10. *Id.*

11. *Id.* at 279.

12. *See id.* at 279–80.

if an appellant failed to object at trial.[13] Although it did not reference *Marin* specifically, the court of appeals relied on this Court's previous cases, in addition to several other courts of appeals' decisions, generally holding that Eighth Amendment issues are forfeited if not raised in the trial court.[14] The court of appeals reached this conclusion without the benefit of our opinion in *Ex parte Maxwell*.[15] A careful reading of *Maxwell* indicates that a majority of this Court has already passed on this issue—if only by necessary implication.

In *Maxwell*, a majority of the Court—over two dissenting opinions joined by a total of four judges—held that the rule announced in *Miller* was a new substantive rule, as opposed to a procedural rule, and therefore applied retroactively.[16] In so holding, the majority concluded that *Miller* "puts a juvenile's *mandatory* 'life without parole' sentence outside the ambit of the State's power."[17] It was Maxwell's status as a juvenile, so went the analysis, that precluded imposing the life-without-parole sentence he received.[18] While on

its face, *Maxwell* appeared to address a pure retroactivity question,[19] it held by necessary implication that a claim asserting an Eighth Amendment violation under *Miller* was not subject to procedural default. The majority opinion specifically acknowledged that, on direct appeal, the court of appeals "rejected [Maxwell's] claim that his automatic sentence violated the Eighth Amendment because he had never raised that claim in the trial court."[20] Nonetheless, the majority granted Maxwell habeas corpus relief by vacating his life-without-parole sentence and remanding the case for further sentencing proceedings permitting the factfinder to determine whether Maxwell's sentence should be assessed at life with or without parole.[21]

■ While this case presents a question of error preservation on appeal and not in a collateral proceeding, the preservation requirement overlaps substantially, and the requirement in each context informs the other.[22] It has become a staple in our

13. *Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim.App.2008).

14. *Garza*, 2012 WL 5236048, at *2 (citing *Rhoades v. State*, 934 S.W.2d 113, 120 (Tex. Crim.App.1996), *Curry v. State*, 910 S.W.2d 490, 497 (Tex.Crim.App.1995), *Ham v. State*, 355 S.W.3d 819, 825 (Tex.App.-Amarillo 2011, pet. ref'd), *Noland v. State*, 264 S.W.3d 144, 152 (Tex.App.-Houston [1st Dist.] 2007, pet. ref'd), and *Nicholas v. State*, 56 S.W.3d 760, 768 (Tex. App.-Houston [14th Dist.] 2001, pet. ref'd)).

15. *Ex parte Maxwell*, 424 S.W.3d 66 (Tex. Crim.App. Mar.12, 2014).

16. *Id.* at 73–76.

17. *Id.* at 75 (emphasis in original).

18. *Id.*

19. *See id.* at 67–68. ("We ordered that this application be filed and set to decide if *Miller v. Alabama* applies retroactively to a claim

raised in a post-conviction proceeding, and, if so, what remedy is appropriate.").

20. *Id.* at 68.

21. *Id.* at 76.

22. *See generally Ex parte Crispen*, 777 S.W.2d 103, 105 (Tex.Crim.App.1989) (stating "this Court adheres to the contemporaneous objection rule which is, generally, that 'appellate courts will not consider any error which counsel for the accused could have called, but did not call, to the attention of the trial court at the time when such error could have been avoided or corrected by the trial court.'"), *Ex parte Bagley*, 509 S.W.2d 332, 333 (Tex.Crim. App.1974) ("The same rule as to the necessity of an objection to complained of evidence has been applied by this Court in habeas corpus cases."), 43B George E. Dix & John M. Schmolesky, Criminal Practice and Procedure § 59:7 (3d ed. 2011) ("*Bagley* incorporates contemporaneous objection law as developed

habeas corpus jurisprudence that preservation of error is generally a prerequisite to being granted relief.[23] In their treatise, Professors Dix and Schmolesky correctly summarize our case law on the topic thus:

Generally, all of the reasons that support the need for a matter to have been raised at trial when the matter is relied upon in direct appeal apply equally or more forcefully when a matter is relied upon in postconviction habeas corpus. Most likely, then, if a matter is one that could be relied upon on appeal only if the defendant called it to the attention of the trial judge in a timely manner and requested appropriate relief, similar action will be held necessary to "preserve" the matter for consideration on habeas corpus.

. . . .

The nature of collateral attack, moreover, suggests that even a more stringent standard than is applied on direct appeal might at least sometimes be appropriate in the habeas corpus context.[24]

Like the result of forfeiture by inaction in the trial court, this Court will not review the merits of a habeas corpus claim if an applicant had the opportunity to raise the issue on appeal.[25] We have held that even constitutional claims are forfeited if an applicant had the opportunity to raise the issue on appeal.[26] This principle stemmed from the oft-quoted axiom "The Great Writ should not be used in matters that should have been raised on appeal."[27] And "the trend of this Court has been to draw stricter boundaries regarding what claims may be advanced on habeas."[28]

■ However, by reaching the merits of Maxwell's claim, the *Maxwell* majority held, perforce, that Maxwell's *Miller* claim was not subject to procedural default. This implied holding was a condition precedent to granting relief; it was a threshold through which the Court allowed Maxwell's claim to pass. Without it, the Court could not entertain the merits of Maxwell's claim consistent with our established case law, much less grant relief on it. *Maxwell*'s result decided the issue before us today: substantive status-based or individualized-sentencing claims under the Eighth Amendment and embraced by *Miller* are not forfeited by inaction. We therefore may not conclude today that Garza's *Miller* claim is forfeited on appeal without an objection at trial and at the same time adhere to the Court's opinion in *Maxwell*. Failing to consider *Maxwell*'s effect on the instant case denies *Maxwell* the force of precedent deserving of an opinion that received the support from a majority of the Court. Until such time as the United States Supreme Court calls this Court's characterization of the *Miller* rule

---

in direct appeal cases into habeas corpus law.").

23. *See, e.g, Ex parte Jimenez,* 364 S.W.3d 866, 882 (Tex.Crim.App.2012), *Ex parte Medellin,* 280 S.W.3d 854, 860–63 (Tex.Crim.App. 2008), *Ex parte Bagley,* 509 S.W.2d at 334.

24. 43B Dix & Schmolesky at § 59:7.

25. *Ex parte Webb,* 270 S.W.3d 108, 111 (Tex. Crim.App.2008), *Ex parte Cruzata,* 220 S.W.3d 518, 520 (Tex.Crim.App.2007), *Ex parte Townsend,* 137 S.W.3d 79, 81 (Tex.Crim.App.2004); *Ex parte Bagley,* 509 S.W.2d at 334.

26. *E.g., Jimenez,* 364 S.W.3d at 882 (holding that Applicant forfeited his claim based on *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), for failing to object at trial and pursue claim on appeal).

27. *Ex parte Banks,* 769 S.W.2d 539, 540 (Tex. Crim.App.1989).

28. *Ex parte Richardson,* 201 S.W.3d 712, 713 (Tex.Crim.App.2006).

into doubt, we are bound by *Maxwell*'s express and necessarily implied holdings.

■ We do find limits on *Maxwell*'s implied holding, though. In granting Maxwell habeas corpus relief, the *Maxwell* majority did not purport to discern whether his *Miller* claim fell within *Marin*'s "absolute prohibitions" or "waiver-only" category. It was sufficient for the majority opinion to hold that Maxwell's claim was simply not forfeited. Likewise, this case does not require that we further define where in *Marin*'s categorical structure a *Miller* claim is properly placed. We reserve such a decision for a matter that properly presents the issue. *Maxwell* sufficiently addressed the propriety of the court of appeals' holding we are called upon to review.

Accordingly, we hold that Garza's claim was not forfeited by his failure to urge his claim in the trial court. The court of appeals' judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

PRICE, J., filed a concurring opinion, in which WOMACK, J., joined.

COCHRAN, J., filed a concurring opinion, in which ALCALA, J., joined.

ALCALA, J., filed a concurring opinion, in which JOHNSON and COCHRAN, JJ., joined.

KELLER, P.J., filed a dissenting opinion.

1. 424 S.W.3d 66 (Tex.Crim.App.2014).

2. —— U.S. ——, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012).

3. Although Maxwell failed to raise his *Miller* claim at the trial court level, 424 S.W.3d at 68, we nevertheless granted him relief in his post-conviction habeas corpus application in the form of a remand for the kind of hearing that *Miller* dictates, having declared such a claim to have retroactive effect even on collat-

PRICE, J., filed a concurring opinion in which WOMACK, J., joined.

I join the Court's opinion without reluctance or hesitation—but then, I was among the majority in *Ex parte Maxwell.*[1] I readily agree with the Court today that *Maxwell* held, if only by necessary implication, that an Eighth Amendment claim predicated on *Miller v. Alabama,*[2] that a mandatory sentence of life without parole cannot be imposed upon a juvenile offender, cannot be forfeited at the trial court level.[3] I write further to explain why I think that the implied holding in *Maxwell* is the correct one.

## I.

In the context of direct appeals, we have declared it to be a "systemic" requirement that courts of appeals address every potential issue of procedural default that might arise on direct appeal, at least before it may *grant* appellate relief.[4] Should it be demonstrated that a court of appeals has failed to do so, this Court will either remand the cause for such further proceedings or, in rare cases where the answer to the procedural default issue is evident, we will resolve it ourselves.[5] Of course, we ourselves have no such backstop when it comes to post-conviction habeas corpus proceedings brought pursuant to Article 11.07,[6] in which we are the

eral attack, without expressly addressing why habeas relief was appropriate notwithstanding Maxwell's failure to invoke *Miller* in the trial court. *Id.* at 76.

4. *E.g., Lackey v. State,* 364 S.W.3d 837, 845 n. 28 (Tex.Crim.App.2012).

5. *E.g., Haley v. State,* 173 S.W.3d 510, 515–17 (Tex.Crim.App.2005).

6. Tex.Code Crim. Proc. art. 11.07.

court of return.[7] In that capacity, we are the ultimate arbiter of the facts and the law, with the power to grant or deny relief as we deem appropriate. When we resolve an application for writ of habeas corpus—at least one that we have filed and set for submission and resolved in the applicant's favor, as we did in *Maxwell*—it should be presumed that we resolved every issue necessary to final disposition of the writ application before we granted relief, including issues of procedural default. Because we granted habeas corpus relief in *Maxwell*, despite the lack of a trial objection, it must be presumed that we necessarily held, however implicitly, that a violation of the Eighth Amendment as recognized in *Miller* was not subject to procedural default by inaction—it simply cannot be forfeited.

## II.

And with good reason. In *Maxwell*, we canvassed the various jurisdictions that have addressed the question of the retroactivity of the Supreme Court's holding in *Miller* and then opted to join those that have held it to be, indeed, fully retroactive. To that end, we concluded that *Miller* announced a substantive limitation upon a state's ability to impose a certain punishment upon a certain class of offender; or, put another way, we deemed *Miller*'s rule to be "categorical because it completely removes a particular punishment from the list of punishments that can be constitutionally imposed, that of mandatory life without parole."[8] It is precisely this kind

of substantive and categorical limitation upon state power that typically triggers the so-called "absolute requirement or prohibition" classification, which *Marin v. State* recognizes to be immune from procedural default because it vindicates a broader societal interest and is therefore essentially not optional with the parties.[9] While we did not *expressly* address the question in *Maxwell* of whether a *Miller* claim is subject to forfeiture by inaction, the reasons we gave for declaring it retroactive nonetheless amply justify placing a violation of *Miller at least* within the class of claims that probably cannot even be affirmatively *waived* (although I agree we need not decide that issue today). Indeed, the hard issue that *Maxwell* presented was whether a *Miller* claim genuinely invokes the kind of substantive and categorical Eighth Amendment prohibition that justifies fully retroactive treatment. Once the majority decided that issue in Maxwell's favor, the incremental step from our conclusion that *Miller* is substantive and categorical for retroactivity purposes, to the conclusion that it occupies one of the non-forfeiture classifications for purposes of a procedural default analysis under *Marin*, seems so obvious that, to a certain extent, the Court can be excused for failing to decide the question overtly in *Maxwell* itself.

COCHRAN, J., filed a concurring opinion in which ALCALA, J., joined.

I agree with the majority that James Garza is entitled to relief under *Miller v. Alabama*[1] even though he, like Terrell

---

7. *E.g., Ex parte Reed,* 271 S.W.3d 698, 754 (Tex.Crim.App.2008) (Price, J., concurring).

8. *Maxwell,* 424 S.W.3d at 74.

9. *See* 851 S.W.2d 275, 279–80 (Tex.Crim.App. 1993) ("Of course, the system also includes a number of requirements and prohibitions which are essentially independent of the litigants' wishes. * * * [A]bsolute requirements

and prohibitions, like rights which are waivable only, are to be observed even without partisan request. But unlike waivable rights, they can't lawfully be avoided even with partisan consent.").

1. 567 U.S. ——, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012).

Maxwell, did not object to his automatic life-without-parole sentence on Eighth Amendment grounds at trial. I write separately to point out that this result is neither novel or untoward.

In *Furman v. Georgia*,[2] the Supreme Court held that the imposition and carrying out of the death penalty, under all then-existing capital-sentencing schemes, constituted cruel and unusual punishment in violation of the Eighth Amendment. The Texas Governor immediately commuted all death sentences for Texas inmates.[3] But suppose he hadn't. Would we, on direct appeal of death sentences after *Furman*, have rejected a *Furman* claim as forfeited because the defendant failed to raise an Eighth Amendment claim at trial? Of course not. That would have been both absurd and manifestly unjust. As pointed out by Justice Powell in his *Furman* dissent, "Whatever uncertainties may hereafter surface, several of the consequences of today's decision are unmistakably clear. The decision is plainly one of the greatest importance. The Court's judgment removes the death sentences previously imposed on some 600 persons awaiting punishment in state and federal prisons throughout the country."[4] The same logic (and law) applies here.

The Supreme Court held, in *Griffith v. Kentucky*,[5] that the failure to apply a newly declared constitutional rule to criminal cases not yet final violates basic norms of constitutional adjudication. As we explained in *Taylor v. State*,[6]

the [*Griffith*] Court criticized as arbitrary the practice of "simply fishing one case from the stream of appellant review, using it as a vehicle for pronouncing new constitutional standards, and then permitting a stream of similar cases subsequently to flow by unaffected by the new rule." The Court also criticized limited prospectivity as inequitable, violating "the principle of treating similarly situated defendants the same." Consequently, the Supreme Court held that a newly announced constitutional rule for conducting criminal prosecutions must be applied retroactively to all cases, state or federal, pending on direct review or not yet final when the rule was announced.[7]

This limited retroactivity principle is at the heart of *Teague:* Limited retroactivity must be given as a matter of course to new constitutional rules announced by the United States Supreme Court.[8] That is, when a new rule is announced by that Court, it must be applied to all cases still pending on direct review in the state sys-

---

**2.** 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).

**3.** *See* Texas Department of Criminal Justice, Death Row Facts, *http://www.tdcj.state.tx.us/death_row_dr/facts.html* ("When capital punishment was declared 'cruel and unusual punishment' by the U.S. Supreme Court on June 29, 1972, there were 45 men on death row in Texas and 7 in county jails with a death sentence. All of the sentences were commuted to life sentences by the Governor of Texas, and death row was clear by March 1973."); *see, e.g., Curry v. State*, 513 S.W.2d 819 (1974); *Short v. State*, 511 S.W.2d 288 (1974); *Hughes v. State*, 506 S.W.2d 625 (1974); *Stultz v. State*, 500 S.W.2d 853 (1973); *Ex*

*parte Enriquez*, 490 S.W.2d 546 (1973); *Hall v. State*, 488 S.W.2d 94 (1972); *Antwine v. State*, 486 S.W.2d 578 (1972).

**4.** *Furman*, 408 U.S. at 416–17, 92 S.Ct. 2726 (Powell, J., dissenting).

**5.** 479 U.S. 314, 322, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987).

**6.** 10 S.W.3d 673 (Tex.Crim.App.2000).

**7.** *Id.* at 678 (citations omitted).

**8.** *Teague v. Lane*, 489 U.S. 288, 304, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

tem.[9]  As we noted in *Taylor*, both *Griffith* and *Teague* bind Texas when dealing with new constitutional rules.[10]

The *Griffith* defendants preserved error at trial via objections, but Garza is entitled to relief under the *Griffith* retroactivity rule even though his Eighth Amendment claim was not preserved at trial.  Why?  Because it wasn't the law at the time of trial.  We do not expect attorneys to be clairvoyant and foresee new constitutional rules before they are announced in assessing their performance.[11]  Even the Supreme Court reviews "forfeited" claims that rely on new constitutional rules—

rules like those announced in *Apprendi*[12] and *Gaudin*[13]—for plain error.[14]  These are newly announced foundational constitutional rights that, like those category-one rights in *Marin v. State*,[15] are not forfeited by the failure to object at trial.

The Supreme Court, like this Court, excuses procedural default in such cases because to not do so would be manifestly unjust.  The logic is laid out in *Reed v. Ross:*[16]

> [T]he failure of counsel to raise a constitutional issue reasonably unknown to him is one situation in which the [cause] requirement is met.  If counsel has no

9. *Id.* ("[T]he 'failure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication.' ") (quoting *Griffith*, 479 U.S. at 322, 107 S.Ct. 708).

10. *Taylor*, 10 S.W.3d at 678–79.  Texas is free to apply more generous retroactivity laws— but not more restrictive ones.  *Danforth v. Minnesota*, 552 U.S. 264, 128 S.Ct. 1029, 169 L.Ed.2d 859 (2008) (*Teague* does not constrain the authority of state courts to give broader effect to new rules of criminal procedure); *State v. Smart*, 202 P.3d 1130, 1136 (Alaska 2009) ("*Danforth* ... allows us to apply either the *Teague* test for full retroactivity or a state constitutional test so long as the state test is at least as comprehensive as the federal test.").

11. *See Ex parte Chandler*, 182 S.W.3d 350, 358–60 (Tex.Crim.App.2005) (noting that "a bar card does not come with a crystal ball attached" and holding that "counsel's performance will be measured against the state of the law in effect during the time of trial and we will not find counsel ineffective where the claimed error is based upon unsettled law") (citation and internal quotation marks omitted).

12. *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt).

13. *United States v. Gaudin*, 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995) (materiality of a false statement must be decided by a jury rather than a trial judge).

14. *United States v. Cotton*, 535 U.S. 625, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002) (applying plain-error test to a case pending on appeal when the new rule in *Apprendi* was announced); *Johnson v. United States*, 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (applying plain-error test to a case pending on appeal when the new rule in *Gaudin* was announced).  *See Cotton*, 535 U.S. at 631–32, 122 S.Ct. 1781 (under the plain-review test, "before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights.  If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.").

15. 851 S.W.2d 275, 278–79 (Tex.Crim.App. 1993) (category-one rights are those that cannot be forfeited by inaction or waived because they are "widely considered so fundamental to the proper functioning of our adjudicatory process" that they are "absolute rights").

16. 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984).

reasonable basis upon which to formulate a constitutional question ... it is safe to assume that he is sufficiently unaware of the question's latent existence that we cannot attribute to him strategic motives of any sort.... Accordingly, we hold that where a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim in accordance with applicable state procedures.[17]

Appellant would be entitled to relief under *Miller* even if we had not held, in *Ex parte Maxwell*, that *Miller* was fully retroactive as a *Teague* exception. And if new constitutional rules subject to limited retroactivity under *Teague*—like *Apprendi* and *Gaudin*—apply to cases pending on direct appeal regardless of whether there was an objection at trial, surely new substantive constitutional rules subject to full retroactivity under a *Teague* exception—like *Miller, Graham, Kennedy, Roper, Atkins* and *Thompson*[18]—must apply to like cases when the right to relief is clear.

As we noted in *Ex parte Maxwell*, these "categorical ban" cases striking down sentencing practices based on mismatches between the culpability of a class of offenders and the severity of a penalty turn on status (juvenile, mental retarded individual) or crime (non-homicide). They are not dependant upon a trial objection for the same reason that they are fully retroactive: [19] Failure to apply them carries a significant risk that a defendant faces a punishment that the law cannot impose upon him because of his status or offense.

This significant risk explains why courts, including this one, uniformly review claims based on new substantive constitutional rules that have been "forfeited" or procedurally defaulted in some manner.[20] For

---

**17.** *Id.* at 15–16, 104 S.Ct. 2901. We have the same rule: The contemporaneous-objection rule does not apply to fundamental constitutional rights—*Marin* category-one rights—that were not recognized at the time of trial. *See Sanchez v. State*, 120 S.W.3d 359, 367 (Tex. Crim.App.2003) ("The 'right not recognized' exception to the contemporaneous-objection rule relates to a kind of fundamental error that is contrary to a specific act of the legislature"; noting that this exception generally applied only to category-one or category-two *Marin* claims).

**18.** *Miller v. Alabama*, 567 U.S. ——, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012) (holding that the Eighth Amendment prohibits a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders); *Graham v. Florida*, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010) (holding that a sentence of life imprisonment without parole for a non-homicide juvenile offender violates the Eighth Amendment); *Kennedy v. Louisiana*, 554 U.S. 407, 128 S.Ct. 2641, 171 L.Ed.2d 525 (2008) (holding that a death sentence for a non-homicide offender is unconstitutional); *Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) (holding that a death sentence for a juvenile offender is

unconstitutional); *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002) (holding the Constitution places a substantive restriction on the State's power to take the life of a mentally retarded offender); *Thompson v. Oklahoma*, 487 U.S. 815, 108 S.Ct. 2687, 101 L.Ed.2d 702 (1988) (holding that a death sentence for juvenile offender who was younger than 16 at time of the offense is unconstitutional).

**19.** *Ex parte Maxwell*, 424 S.W.3d 66, 74 & n. 38 (Tex.Crim.App.2014) (noting *Graham, Roper,* and *Atkins* are all applied retroactively); *See In re Sparks*, 657 F.3d 258, 261–62 (5th Cir.2011).

**20.** *Ex parte Blue*, 230 S.W.3d 151 (Tex.Crim. App.2007) (petitioner was entitled to merits review of *Atkins* claim raised for first time in successive petition if he could make threshold showing that no rational juror would have found that he was not mentally retarded); *Rogers v. State*, 267 P.3d 802, 803 (Nev.2011) (*Graham* applies retroactively, and so provides good cause to excuse procedural default); *Bowling v. Commonwealth*, 163 S.W.3d 361, 372–73 (Ky.2005) (applying "miscarriage of justice" exception to proce-

example, once the Supreme Court held that those who are "mentally retarded" or "intellectually disabled" are exempt from the death penalty,[21] we did not reject mental retardation claims merely because the defendant had not raised that claim at trial.[22] None of those death-row inmates who brought an *Atkins* claim at the next possible opportunity, usually an original or subsequent habeas corpus application, were summarily rejected merely because they had not raised the claim at trial. Indeed, Article 11.071, § 5, explicitly provides for a subsequent habeas application based on new law and new .constitutional rules.[23]

Courts that have addressed the effect of *Miller v. Alabama*, on cases tried before *Miller*, but not yet final, have consistently rejected claims that the *Miller* issue was forfeited by a failure to object at trial. In *People v. Gutierrez*,[24] the California Supreme Court remarked that it was not surprising that Gutierrez failed to raise an Eighth Amendment claim at trial "because at the time the high court had not yet granted review in *Miller* and no court had even held that a mandatory sentence of life without parole for juveniles convicted of homicide was unconstitutional." [25] The Arkansas Supreme Court, in *Whiteside v. State*,[26] noted that the State's argument that the *Miller* claim had been forfeited "ignores precedent holding that when a Supreme Court decision results in a 'new rule,' that rule applies to all criminal cases still pending on direct review." [27] Courts in Pennsylvania [28] and Colorado [29] agree— citing the principles, respectively, of the non-forfeitability of an illegal sentence, efficiency, and judicial economy.

We have said that the failure to object on Eighth Amendment grounds at trial forfeits review of the claim on appeal.[30] But that forfeiture rule does not apply when the Supreme Court has just announced a new Eighth Amendment categorical right. When the Supreme Court

durally barred *Atkins* claim); *Head v. Hill*, 277 Ga. 255, 587 S.E.2d 613, 620 (2003) (same).

**21.** *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002).

**22.** *See Ex parte Briseno*, 135 S.W.3d 1, 3 (Tex. Crim.App.2004) (applying *Atkins* retroactively and addressing merits of mental retardation claim first raised on a subsequent writ of habeas corpus).

**23.** Tex.Code Crim. Proc. art. 11.071, § 5(a)(1).

**24.** 58 Cal.4th 1354, 171 Cal.Rptr.3d 421, 324 P.3d 245 (2014).

**25.** *Id.* at 431, 324 P.3d 245.

**26.** 426 S.W.3d 917 (Ark.2013).

**27.** *Id.* at *5, 426 S.W.3d 917.

**28.** *Commonwealth v. Brown*, 71 A.3d 1009, 1016 (Pa.Sup.Ct.2013) (noting that, in *Commonwealth v. Peterson*, 67 A.3d 789 (Pa.2013), the Pennsylvania Supreme Court implicitly recognized that a challenge to the constitutionality of a mandatory sentence of life in prison without the possibility of parole for a juvenile challenges the legality of the sentence and thus cannot be waived).

**29.** *People v. Banks*, —— P.3d ——, —— - ——, 2012 WL 4459101, *18–20 (Colo.Ct.App.2012) (addressing defendant's "forfeited" constitutional challenge "because (1) it can be reviewed as a matter of law apart from a fully developed factual record; (2) the remedy for the error would be merely vacating the sentence in part and remanding for resentencing, not reversing and ordering a retrial; and (3) the purpose of conserving judicial resources by affording the trial court an opportunity to correct error and thereby avoid a retrial does not apply here, as defendant could not have raised a challenge under *Miller* prior to sentencing since the case had not been decided then") (citation omitted).

**30.** *Curry v. State*, 910 S.W.2d 490, 497 (Tex. Crim.App.1995).

outlines certain categorical Eighth Amendment rules—we cannot execute the mentally retarded; we cannot execute juveniles; we cannot execute non-homicide offenders; we cannot sentence juveniles who have not committed a homicide to life without parole; we cannot automatically sentence a juvenile convicted of homicide to life without parole—those fundamental or "category one" rules apply retroactively and without regard to the normal rules of procedural default. We do this to ensure judicial integrity and to avoid the spectacle of a manifest miscarriage of justice.

With these remarks, I respectfully concur in the Court's judgment.

ALCALA, J., filed a concurring opinion in which JOHNSON and COCHRAN, JJ., joined.

I conclude that James Garza, appellant, whose claim reaches this Court on direct appeal, did not forfeit his complaint by failing to object at trial on the basis of a constitutional rule that had not yet been established at the time of his trial. Although it reaches the same conclusion, the majority opinion does so through an alternative analysis that I believe is unnecessary for resolving this appeal and that appears to suggest that the preservation-of-error requirements applicable on direct appeal are identical to those required for obtaining habeas corpus relief, a principle that I disagree has been definitively established. I, therefore, concur only in this Court's judgment.

### I. *Miller v. Alabama*'s New Constitutional Rule Applies to Direct–Appeal Cases

Appellant's trial began in November 2011; his motion for new trial was filed in December 2011; and the Supreme Court decided *Miller v. Alabama* in June 2012, while this case remained pending on direct appeal. *See Miller v. Alabama,* —— U.S. ——, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012); *Garza v. State,* No. 04–11–00891–CR, 2012 WL 5236048, at *1 (Tex.App.-San Antonio Oct. 24, 2012) (mem. op., not designated for publication). In *Miller,* for the first time, the Supreme Court held that the punishment of mandatory life without parole for those under the age of eighteen at the time of their crimes violates the Eighth Amendment's prohibition on cruel and unusual punishments. *See Miller,* 132 S.Ct. at 2469; U.S. Const. amends. VIII, XIV. Finding no precedent directly on point, the Supreme Court observed in *Miller* that "the confluence of ... two lines of precedent leads to the conclusion that mandatory life-without-parole sentences for juveniles violate the Eighth Amendment." *See Miller,* 132 S.Ct. at 2464. One line of precedent barred capital punishment for children, while the other prohibited life without parole for a child who committed a "nonhomicide offense." *Id.* at 2470 (citing *Graham v. Florida,* 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010); *Roper v. Simmons,* 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005); *Thompson v. Oklahoma,* 487 U.S. 815, 108 S.Ct. 2687, 101 L.Ed.2d 702 (1988)). Following *Miller,* this Court recently held in *Ex parte Maxwell* that the *Miller* decision is "a 'new substantive rule' that puts a juvenile's *mandatory* 'life without parole' sentence outside the ambit of the State's power." *Ex parte Maxwell,* 424 S.W.3d 66, 75 (Tex. Crim.App.2014) (emphasis original).

Because the present case is on direct appeal, this Court must apply the constitutional ruling in *Miller* to this case. The record shows that, during the trial proceedings, the parties represented to the jury and court that appellant was seventeen years of age at the time of the offense. The Supreme Court has observed that the "failure to apply a newly declared

constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication." *Teague v. Lane,* 489 U.S. 288, 304, 109 S.Ct. 1060, 1072, 103 L.Ed.2d 334 (1989) (citing *Griffith v. Kentucky,* 479 U.S. 314, 322, 107 S.Ct. 708, 713, 93 L.Ed.2d 649 (1987)) (quotations omitted). Thus, " 'the integrity of judicial review' requires the application of the new rule to 'all similar cases pending on direct review.' " *Id.* (quoting *Griffith,* 479 U.S. at 323, 107 S.Ct. at 713).

Ordinarily, a defendant waives a complaint that had not been preserved at trial based on an alleged violation of the Eighth Amendment's prohibition on cruel and unusual punishments. *See Rhoades v. State,* 934 S.W.2d 113, 120 (Tex.Crim.App.1996); U.S. Const. amends. VIII, XIV. I conclude, however, that in light of this Court's decision in *Maxwell* that the *Miller* decision puts a juvenile's mandatory life-without-parole sentence "outside the ambit of the State's power," that, at least for these cases that are presented on direct review, this type of complaint is not subject to ordinary principles of waiver or procedural default. *Maxwell,* 424 S.W.3d at 75; *see also Gutierrez v. State,* 380 S.W.3d 167, 176 (Tex.Crim.App.2012) ("a state trial court may no more order a convicted defendant to leave the State than it may punish him with a sentence that is beyond the statutorily applicable range of punishment"). A defendant "cannot agree to submit to [a punishment] that the criminal justice system simply finds intolerable and which is therefore, by definition, not even an option available to the parties." *Gutierrez,* 380 S.W.3d at 175–76.

Taking these principles in mind, I would hold that, because the constitutional rule at issue had not been established at the time of appellant's trial, his counsel's failure to object did not forfeit his complaint on that basis. Furthermore, because this case is on direct appeal, appellant is entitled to the benefit of the new rule of constitutional law.

## II. Conclusion

I respectfully concur only in this Court's judgment.

KELLER, P.J., filed a dissenting opinion.

We should dismiss appellant's petition as improvidently granted because the record does not contain a judicial finding that appellant is a juvenile and the record does not otherwise conclusively show that to be the case. I also write to express my disagreement with the Court's holding that a rule of law can be established by our complete failure to address an issue in a prior case. And even if a rule of law could be established in such a manner, I do not agree that we would be constrained to follow it in a subsequent case.

### 1. Proof of Appellant's Age

In *Miller,* the Supreme Court held that the Eighth Amendment's Cruel and Unusual Punishments Clause prohibited the automatic imposition of a life without parole sentence on someone who was a juvenile at the time he committed the offense.[1] But whether, in this case, appellant was in fact a juvenile at the time he committed the offense is in doubt. In its opinion, the Court of Appeals remarked, "Garza gave conflicting statements to Colorado authorities about his age, stating at various times he was eighteen, nineteen, and finally seventeen years of age."[2] In a footnote, the

---

1. —— U.S. ——, ——, 132 S.Ct. 2455, 2460, 183 L.Ed.2d 407 (2012).

2. *Garza v. State,* No. 04–11–00891–CR, slip op. at 2, 2012 WL 5236048 (Tex.App.-San

court concluded, "The record does not conclusively establish Garza's age." [3] Appellant acknowledges this footnote in his brief, but he has made no attempt, in either his brief or his petition, to refute the conclusion therein that the record does not conclusively establish his age. The State devotes a page of its brief on discretionary review to whether applicant's age has been established. The State argues that "[t]here is conflicting evidence as to [appellant's] age at the time he committed the offense, and no fact-finder has been called on to decide the issue."

From the record references supplied by the State, it is apparent that appellant did give conflicting statements about his age, that he had no identification, that he gave a fake name, and that he did not give information about his parents when asked. A co-conspirator told officers that appellant was actually seventeen years old, and when confronted with that statement, appellant stated that he was seventeen. The record also shows that Colorado authorities treated appellant as a juvenile after that point. Nevertheless, the evidence is conflicting, I see no judicial finding in the record that appellant was actually under age eighteen at the time he committed the offense, and appellant has not directed us to any such finding.

Under these circumstances, the direct-appeal record is not sufficient to show that appellant is entitled to relief under *Miller,* which applies only to individuals who are under age eighteen. A remand in this case would be useless because the court of appeals has already determined that the record does not conclusively establish appellant's age. Moreover, there is no pressing jurisprudential need to review the court of appeals's unpublished opinion in this case. There is a forum in which appellant's claim and any associated issues can be resolved: habeas corpus. The court of appeals noted the State's accurate suggestion that "Garza's issue might be more appropriately raised in a writ of habeas corpus, which would allow Garza the opportunity to more fully develop the record with regard to his age." [4] Before granting relief, we should first determine in habeas proceedings whether appellant was in fact a juvenile when he committed this capital murder.[5]

## 2. Implied Holdings

In *Ex parte Maxwell,* we held that the Supreme Court's decision in *Miller* applied retroactively to cases on collateral review.[6] Neither the majority opinion nor the two dissents addressed whether error had been forfeited by the failure to raise the claim at trial.[7] Nevertheless, the Court says that "[a] careful reading of *Maxwell* indicates that a majority of this Court has already passed on this issue—if only by necessary implication." I disagree.

It is true, as the Court says, that we *should* have addressed the issue of procedural default before remanding the case

Antonio October 24, 2012) (not designated for publication).

3. *Id.* at 2 n. 1.

4. *Garza,* No. 04–11–00891–CR, slip op. at 4 n. 3.

5. *See Ex parte Brown,* 205 S.W.3d 538, 546 (Tex.Crim.App.2006) (quoting *Ex parte Torres,* 943 S.W.2d 469, 475 (Tex.Crim.App.1997)

(claim that was raised on direct appeal may be raised again on habeas when "direct appeal cannot be expected to provide an adequate record to evaluate the claim in question, and the claim might be substantiated through additional evidence gathering in a habeas corpus proceeding")).

6. 424 S.W.3d 66, 68 (Tex.Crim.App.2014).

7. *See id., passim.*

for further sentencing proceedings.[8] But we did not. Justice Jackson has famously said, "We are not final because we are infallible, but we are infallible only because we are final."[9] Instead of assuming that we must have intentionally, but silently, resolved the procedural default issue in the convicted person's favor because that is the only way our disposition in *Maxwell* could have been correct, we should admit that we made a mistake, overlooking an issue that we should have addressed. Courts make mistakes. That is one reason we have motions for rehearing.[10] On occasion, we have corrected our own mistakes on rehearing.[11] But it is certainly possible that a mistake of ours will not be corrected

by way of rehearing because the aggrieved party fails to raise the issue in a motion for rehearing or because of an oversight on our part. We should not compound such a mistake by proceeding under the legal fiction that our complete failure to address the issue was actually a silent disposition.[12]

### 3. Binding Precedent

But even if one considered *Maxwell*'s failure to address the issue of procedural default to be a silent holding, the question remains whether this Court should follow that holding in subsequent cases or whether this Court should, in essence, overrule that holding at the earliest opportunity.[13]

8. *See id.* at 76 (remanding for further sentencing proceedings "to permit the factfinder to assess applicant's sentence at (1) life with the possibility of parole (as both pre–2005 and post–2013 Texas law permits) or (2) life without parole after consideration of applicant's individual conduct, circumstances, and character"); *Gipson v. State*, 383 S.W.3d 152, 159 (Tex.Crim.App.2012) (court of appeals's opinion was deficient for failing to address procedural-default issue regardless of whether the issue was raised by the parties).

9. *See Ex parte Lewis*, 219 S.W.3d 335, 374 (Tex.Crim.App.2007) (Cochran J., concurring) (quoting *Brown v. Allen*, 344 U.S. 443, 540, 73 S.Ct. 397, 97 L.Ed. 469 (1953) (Jackson, J., concurring)).

10. *See Ex parte Ramey*, 382 S.W.3d 396, 398 n. 7 (Tex.Crim.App.2012) ("if applicant had believed that we failed to address an issue that he raised in his brief, he could have filed a motion for rehearing to point that out").

11. *See Dixon v. State*, 2 S.W.3d 263, 270–72, 270 n. 5, (Tex.Crim.App.1999) (op. on State's motion for rehearing) (noting that, among other deficiencies, our opinion on original submission decided a different issue than the one that was presented to the court of appeals and on which we granted discretionary review); *Hughes v. State*, 878 S.W.2d 142, 151–52 (Tex.Crim.App.1992) (op. on State's motion for rehearing) (overturning reversal of conviction on original submission that was based on trial court's failure to grant a chal-

lenge for cause because the record showed that the defendant had received an extra peremptory strike). *See also Wilson v. State*, 311 S.W.3d 452 (Tex.Crim.App.2010) (acknowledging that the defendant did not preserve the precise complaint that formed the basis of our decision on original submission but finding it of no consequence because he preserved a different complaint that compelled the same result).

12. *See VanNortrick v. State*, 227 S.W.3d 706, 708 (Tex.Crim.App.2007) (quoting *Cain v. State*, 947 S.W.2d 262, 264 (Tex.Crim.App. 1997) ("To claim that an admonishment was in substantial compliance even though it was never given is a legal fiction.")).

13. Justice Scalia has forcefully argued that it is desirable to overrule bad precedent at the earliest opportunity:

[T]he respect accorded prior decisions increases, rather than decreases, with their antiquity, as the society adjusts itself to their existence, and the surrounding law becomes premised upon their validity. The freshness of error not only deprives it of the respect to which long-established practice is entitled, but also counsels that the opportunity of correction be seized at once, before state and federal laws and practices have been adjusted to embody it.
*South Carolina v. Gathers*, 490 U.S. 805, 824, 109 S.Ct. 2207, 104 L.Ed.2d 876 (Scalia, J., dissenting). The case Justice Scalia wanted

One important factor to consider when deciding whether to overrule a prior decision is whether the prior decision was flawed from the outset.[14] A decision can be flawed if it fails to consider factors that are relevant to the issue it resolves,[15] relies upon an illogical inferential leap from one proposition to another,[16] cites no authority for a proposition that is crucial to its holding,[17] relies on cases that do not support its holding,[18] or offers no reasoning in support of a proposition that is crucial to its holding.[19] *Maxwell* did not discuss the issue of procedural default at all, and consequently, it failed to offer any authority or reasoning in support of a procedural-default holding. It is hard to imagine how a decision could be more flawed than one that does not even purport to identify, much less address, the issue that was supposedly decided.

Of course, when a decision is flawed because of a failure to supply supporting authority or reasoning, the ultimate conclusion of that decision may nevertheless be correct.[20] But if that is so, we should analyze the merits of the issue rather than simply relying upon the flawed decision.[21]

### 4. Right Not Recognized

Judge Cochran's concurring opinion advances the idea that the appellant's claim is immune from procedural default because it was not recognized as a valid claim at the time of trial. In support of this claim, the opinion relies upon, and intermingles, four distinct doctrines that are, in turn, separate from the Texas rule of procedural default. In doing so, the concurrence jumbles up the concepts of error preservation and retroactivity.

First, the concurrence relies upon the doctrine, articulated in *Griffith v. Kentucky*,[22] that new federal constitutional rules are retroactive to cases pending on direct appeal. Yes, the *Griffith* retroactivity-on-direct-appeal rule applies to all new

to overrule, *Booth v. Maryland*, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), was ultimately overruled by *Payne v. Tennessee*, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991).

14. *Grey v. State*, 298 S.W.3d 644, 646 (Tex. Crim.App.2009); *Lewis*, 219 S.W.3d at 338.

15. *Fienen v. State*, 390 S.W.3d 328, 334–35 (Tex.Crim.App.2012).

16. *Grey*, 298 S.W.3d at 649–50.

17. *Lewis*, 219 S.W.3d at 358 ("With no authority whatsoever, the *Bauder [v. State*, 921 S.W.2d 696 (Tex.Crim.App.1996) ] Court contended that 'the right to a trial before the jury first selected is the right to a *fair* trial before that jury.' ").

18. *Bawcom v. State*, 78 S.W.3d 360, 363 (Tex. Crim.App.2002); *Malik v. State*, 953 S.W.2d 234, 236–37, 239 (Tex.Crim.App.1997).

19. *Leday v. State*, 983 S.W.2d 713, 721–22 (Tex.Crim.App.1998) (discussing *Palmer v. State*, 475 S.W.2d 797 (Tex.Crim.App.1972));

*Brooks v. State*, 957 S.W.2d 30, 33 (Tex.Crim. App.1997) (discussing *Parasco v. State*, 165 Tex.Crim. 547, 309 S.W.2d 465 (1958)).

20. *See Mosley v. State*, 983 S.W.2d 249, 255–56 (Tex.Crim.App.1998) (observing, in connection with defendant's point of error 60, that *Rousseau v. State*, 855 S.W.2d 666, 687–688 (Tex.Crim.App.1993) failed to cite authority for its holding regarding whether a method of selecting the grand jury foreman violates the constitution but ultimately concluding that *Rousseau's* holding was correct).

21. *See id.* (analyzing the grand-jury issue that was previously decided adversely to the defendant in *Rousseau*). *See also id.*, 983 S.W.2d 249, 1998 Tex.Crim.App. LEXIS 86, *51 n. 22 (portion not designated for publication) (referring to "a reexamination of prior precedent urged by appellant in point of error 60").

22. 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987).

federal constitutional rules,[23] but most federal constitutional violations may nevertheless be forfeited by a failure to raise the claim.[24] The Supreme Court has itself explained that the newness of a constitutional rule does not necessarily exempt it from procedural default.[25]

Judge Cochran's concurrence next relies upon the doctrine articulated in *Teague v. Lane*[26] concerning when a new federal constitutional rule may be applied retroactively on collateral review. But the Supreme Court has said that a federal court should ordinarily address whether a claim has been procedurally defaulted under state law *before* addressing whether the claim is retroactive under *Teague*.[27] If a procedural default issue can be addressed before a *Teague* issue, it must be that relief can be denied on the basis of procedural default regardless of whether the new rule would be retroactive under *Teague*. The Supreme Court did articulate an exception to the principle of giving state-law-procedural-default issues priority, but that exception applied where the *Teague* issue was "easily resolvable against the habeas petitioner, whereas the procedural bar issue involved complicated issues of state law." [28]

Judge Cochran's opinion also relies upon the "plain error doctrine" that is followed by federal courts in deciding to review some errors on direct appeal in the federal system that were not raised at trial. But Texas does not adhere to the plain error doctrine; we apply the three-category approach articulated in *Marin v. State*.[29] And even under the federal plain-error

**23.** *Davis v. United States,* — U.S. —, 131 S.Ct. 2419, 2430, 180 L.Ed.2d 285 (2011).

**24.** *See Henderson v. United States,* — U.S. —, 133 S.Ct. 1121, 1126, 185 L.Ed.2d 85 (2013) (quoting *Yakus v. United States,* 321 U.S. 414, 444, 64 S.Ct. 660, 88 L.Ed. 834 (1944) ("No procedural principle is more familiar to this Court than that a constitutional right, or a right of any sort, may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.") (brackets and internal quotation marks omitted)).

**25.** *Henderson,* 133 S.Ct. at 1126 (regarding the plain error doctrine: "Even where a new rule of law is at issue, Rule 52(b) does not give a court of appeals authority to overlook a failure to object unless an error not only affects substantial rights but also seriously affect[s the fairness, integrity or public reputation of judicial proceedings.") (brackets and internal quotation marks omitted); *Powell v. Nevada,* 511 U.S. 79, 84–85, 114 S.Ct. 1280, 128 L.Ed.2d 1 (1994) ("It does not necessarily follow ... that Powell must be set free, or gain other relief, for several questions remain open for decision on remand. In particular, the Nevada Supreme Court has not yet closely considered the appropriate remedy for a delay in determining probable cause ... or

the consequences of Powell's failure to raise the federal question, or the district attorney's argument that introduction at trial of what Powell said on November 7, 1989, was 'harmless'.... Expressing no opinion on these issues, we hold only that the Nevada Supreme Court erred in failing to recognize that *Griffith v. Kentucky* calls for retroactive application of [*County of Riverside, Byrd v.*] *McLaughlin's [*500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991)] 48–hour rule.") (citations and internal quotation marks omitted, emphasis added); *Ford v. Georgia,* 498 U.S. 411, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991) (addressing whether state-law procedural bar was an adequate and independent ground to bar review of a *Batson* claim that was retroactive under *Griffith* and holding that the state procedural rule was not adequate because it had not been firmly established and regularly followed at the time of the defendant's trial).

**26.** 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

**27.** *Lambrix v. Singletary,* 520 U.S. 518, 522–24, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997).

**28.** *Id.* at 525, 117 S.Ct. 1517.

**29.** 851 S.W.2d 275 (Tex.Crim.App.1993).

doctrine, error does not become 'plain' solely on the basis that the rule had not been articulated at the time of trial.[30]

Finally, Judge Cochran's concurring opinion relies upon *Reed v. Ross*,[31] which articulated the "cause and prejudice" standard that allows federal courts to sometimes address errors on federal habeas that were procedurally defaulted in state court. Texas has not adopted the cause-and-prejudice standard for state habeas, much less for direct appeal. And even under federal law, the fact that an issue involves new law is not always sufficient to demonstrate "cause" under the cause-and-prejudice standard.[32]

In addition to relying upon doctrines not directly applicable to the case at hand to support this "right not recognized" approach, Judge Cochran's opinion contends that our jurisprudence in *Marin* recognizes "the same rule: The contemporaneous objection rule does not apply to fundamental constitutional rights—*Marin* category-one rights—that were not recognized at the time of trial." In support of this statement, the opinion cites *Sanchez v. State*.[33] This contention is inaccurate for at least two reasons. First, a *Marin* category-one right is not "the same rule" as the "right not recognized" rule. A *Marin* category-one right is exempt from the contemporaneous objection rule regardless of whether the right was recognized at

the time of trial.[34] Second, the opinion is simply wrong to claim that *Sanchez* supports its position. In *Sanchez*, we expressly stated that the " 'right not recognized' doctrine is inconsistent with our current law of error preservation," [35] and we said that the doctrine related to a kind of fundamental error "that *Marin* generally eliminated from our jurisprudence." [36]

## 5. Disposition

I would dismiss the petition as improvidently granted because appellant's status as a juvenile at the time of the offense has not been established. We need not, and should not, address a complex issue of procedural default at this juncture. If this Court nevertheless feels compelled to address the procedural-default issue, it ought to conduct a serious analysis of the merits rather than rely upon our failure to address the issue in *Maxwell.*

I respectfully dissent.

---

**30.** *Henderson,* 133 S.Ct. at 1126.

**31.** 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984).

**32.** *Smith v. Murray,* 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986) ("Nor can petitioner rely on the novelty of his legal claim as 'cause' for noncompliance.... As petitioner has candidly conceded, various forms of the claim he now advances had been percolating in the lower courts for years at the time" he failed to raise his claim in state court.).

**33.** 120 S.W.3d 359, 367 (Tex.Crim.App.2003).

**34.** *See Marin,* 851 S.W.2d at 279 ("Rights which are waivable only, as well as absolute systemic requirements and prohibitions, cannot be made subject to rules of procedural default because, by definition, they are not forfeitable.").

**35.** *Sanchez,* 120 S.W.3d at 365.

**36.** *Id.* at 367.