

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-14-00314-CR

RACHEL JOHNSON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 137th District Court
Lubbock County, Texas
Trial Court No. 2013-438,766, Honorable John J. "Trey" McClendon, Presiding

May 14, 2015

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Appellant, Rachel Johnson, appeals her conviction for robbery. Through a single issue, she contends that the sentence assessed violates the state and federal prohibition on cruel and unusual punishment. We affirm.

### Background

Appellant was charged with aggravated robbery. However, after a bench trial she was found guilty of robbery. The trial court sentenced her to six years in prison. On appeal, appellant contends that she was probation eligible, she had one prior

misdemeanor assault charge for which she received deferred adjudication, there was testimony from a probation officer that she would be a good candidate for probation, she used a pellet gun during the robbery, she purportedly looked uncomfortable holding the pellet gun, and she apologized to the victim in open court.

### Standard of Review

Assuming, *arguendo*, that the contention was preserved for review even though not raised below, *compare Garza v. State*, 435 S.W.3d 258, 263 (Tex. Crim. App. 2014) (indicating that Garza's Eighth Amendment claim was not forfeited by his failure to urge his claim in the trial court) and *Curry v. State*, 910 S.W.2d 490, 497 (Tex. Crim. App. 1995) (stating that the failure to object that the sentence constitutes cruel and unusual punishment waives error), we nonetheless overrule it.

The Eighth Amendment of the United States Constitution prohibits excessive bail or fines as well as cruel and unusual punishment. *See* U.S. Const. Amend. VIII. The provision is applicable to the states through the Fourteenth Amendment, *Furman v. Georgia*, 408 U.S. 238, 239, 92 S.Ct. 2726, 2727, 33 L.Ed.2d 346 (1972); *Robinson v. California*, 370 U.S. 660, 666-67, 82 S.Ct. 1417, 1420-21, 8 L.Ed.2d 758 (1962), and flows from the basic "'precept of justice that punishment for crime should be graduated and proportioned to the offense.'" *Atkins v. Virginia*, 536 U.S. 304, 311, 122 S.Ct. 2242, 2246, 153 L.Ed.2d 335 (2002), *quoting Weems v. United States*, 217 U.S. 349, 367, 30 S.Ct. 544, 549, 54 L.Ed. 793 (1910).

It is undisputed that the sentence imposed by the trial court in the case before us was within the range of punishment authorized by the Legislature. Appellant was sentenced to six years in prison. The punishment range for a second degree felony

offense of robbery is not more than twenty years or less than two years. TEX. PENAL CODE ANN. § 12.33 (a) (West 2011). Furthermore, Texas courts have traditionally held that punishment assessed within the range set by the Legislature is not excessive, cruel, or unusual. *E.g., Price v. State*, 35 S.W.3d 136, 144 (Tex. App.—Waco 2000, pet. ref'd); *Winchester v. State*, 246 S.W.3d 386, 388 (Tex. App.—Amarillo 2008, pet. ref'd); *Delacruz v. State,* 167 S.W.3d 904, 906 (Tex. App.—Texarkana 2005, no pet.). Nevertheless, appellant suggests that her claim of gross disproportionality is independent of that analysis and survives such proof. So too does she cite authority to support her proposition. *See e.g., Lackey v. State*, 881 S.W.2d 418, 421 (Tex. App.—Dallas 1994, writ ref'd) (stating that the Dallas court will review a sentence to determine whether it is grossly disproportionate), *citing Harmelin v. Michigan*, 501 U.S. 957, 991-93, 111 S.Ct. 2680, 2700, 115 L.Ed.2d 836 (1991) (Scalia, J., plurality op.).

The *Lackey* court mentioned various factors considered in determining disproportionality, which factors were first discussed in *Solem v. Helm,* 463 U.S. 277, 290, 103 S.Ct. 3001, 3009, 77 L.Ed.2d 637 (1983). They consist of the gravity of the offense, the harshness of the penalty, the sentences imposed on other criminals in the same jurisdiction, and the sentences imposed for the commission of the same crime in other jurisdictions. *Lackey v. State,* 881 S.W.2d at 420-21. Assuming, *arguendo,* that they are applicable, our consideration of same does not lead us to conclude that the sentence was cruel and unusual.

As previously mentioned, the sentence fell within the range of punishment mandated by statute; consequently, the people of Texas (as reflected through the vote of the Legislature) considered the punishment appropriate. Furthermore, the offense

3

was dispatched as a robbery with a gun. When police spoke with the victim, she was "hysterical," "crying uncontrollably, visibly shaking [and] very upset." The victim stated that "someone had come in, pointed a gun at her, demanded money, and then left the store." Furthermore, according to the officer, "[i]t took several minutes [for the victim to talk], [I] had to console her, try to calm her down . . . ." A counselor was requested for the victim and she continued to shake while speaking to the counselor. The officer subsequently viewed videotape of the robbery and was able to obtain a description of the assailant. Furthermore, he observed "a large black female enter the store with a hunting style rifle, scope mounted on top of it. It was carried under her left arm. The way she moved in the store with the gun in her arm, she appeared to not be very comfortable with it, not like a - - almost like she hadn't handled it a lot prior to, kind of just the way it moved. It waived around, just not smooth. . . ." He, further, viewed the "suspect approach the counter, point the barrel of the rifle directly at the victim in her face, and it – face, head area. It looked - - the barrel was kind of up from under her arm, pointing up. . . ."

That the weapon appeared to be a firearm is clear. Though never recovered and characterized as a BB or pellet gun, an expert testified that it was "capable of causing death or serious bodily injury." The victim also testified that appellant pulled a gun and pointed it at her when she entered the convenience store and that she was "scared for [her] life." Appellant asked her for money and the victim gave it to her.

Allegedly, appellant was the sole care taker of five children and of her father. Furthermore, she told the victim she was sorry and became emotional and cried during

4

the trial.  Finally, appellant failed to cite us to evidence describing the measure of punishment levied in like cases.

From the foregoing, we find that the trial court could well have concluded that the offense was grave.  The victim did not view the situation as minor but rather suffered from being involved therein.  Furthermore, this was not appellant's first criminal transgression.  And, while she may be responsible for five children, we know of no defense that allows one in such a situation to engage in criminal conduct.

Given the totality of the circumstances, appellant's status as being qualified for probation is not telling.  Indeed, she had enjoyed community supervision for another offense only to engage in criminality again.  To use the vernacular proffered by appellant, the "punishment fit both the crime and the offender," or so a rational fact finder concluded, and we cannot hold otherwise under the law or record.  Appellant's sentence was not disproportionate or cruel and unusual.

Accordingly, we affirm the judgment of the trial court.

Per Curiam

Do not publish.

5