COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | § | |
| JASON LEE KILLIAN, | | No. 08-15-00062-CR |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | 355th District Court |
| | § | |
| THE STATE OF TEXAS, | | of Hood County, Texas |
| | § | |
| Appellee. | | (TC # CR12318) |
| | § | |

# **O P I N I O N**

This is an appeal from an adjudication of guilt, after the trial court revoked Appellant's community supervision.  By all accounts, the Appellant has mental health issues, compounded by substance abuse.  At the revocation hearing, the trial judge was essentially asked whether a drug treatment program somehow failed Appellant, or whether Appellant failed the program by suddenly refusing to participate in it.  The options before the trial court were limited, and the choices difficult.  Because we find the trial court did not err in revoking Appellant's community supervision, nor in sentencing Appellant to prison as it did, we affirm the conviction below as modified.

## **FACTUAL SUMMARY**[1]

On March 26, 2013, Appellant pled guilty to an assault on a public servant.  As a third

---

[1]  This case was transferred from our sister court in Fort Worth pursuant to the Texas Supreme Court's docket equalization efforts.  *See* TEX.GOV'T CODE ANN. § 73.001 (West 2013).  We follow the precedents of the Fort Worth court to the extent they might conflict with our own.  *See* TEX.R.APP.P. 41.3.

degree felony, the charge carried a possible prison term of not more than ten, nor less than two years, and a fine not to exceed $10,000.00. The trial court deferred an adjudication of guilt, and placed Appellant on community supervision for five years. He was also assessed a $1,000 fine along with court costs. A special condition of that supervision required Appellant to complete an assessment with the local mental health authority and to comply with any treatment or recommendation it deemed necessary.

On July 18, 2013, the trial court modified the conditions of community supervision to add three additional requirements. First, Appellant was required to undergo weekly urinalysis. Second, Appellant was sentenced to serve four days in the county jail. Finally, Appellant was required to complete a designated substance abuse program. These modifications came following an alleged probation violation for using methamphetamines.

Less than a month later, the State moved to proceed with an adjudication of guilt in part because Appellant tested positive for methamphetamine on several other occasions. On September 17, 2013, the trial court entered an order continuing the probation, but added an additional condition relevant to the issues before us. Appellant was required to remain in a substance abuse program run by the Texas Department of Criminal Justice, administered at a Substance Abuse Felony Punishment Facility ("SAFP facility"), and to comply with all the rules of the program until discharged by the trial court. After his release from the SAFP facility, he was required to participate in a "drug or alcohol abuse continuum of care treatment plan" developed by the Texas Commission on Alcohol and Drug Abuse, and to abide by the rules of that plan until discharged by the staff. That plan included a ninety day stay in a half-way house, followed by a year-long "after care" program. The entire SAFP facility program, including the aftercare, is the most intensive substance abuse program available to the State.

2

Appellant was in the SAFP facility from November 19, 2013 to August 13, 2014, which is described in the record as residential incarceration. He successfully completed that portion of the program. On August 13, 2014, Appellant was released from the SAFP facility to Abode Treatment, Inc. which was to provide the first of two parts of the continuum of care treatment plan. Adobe is a halfway house designed to transition persons back into the community. Appellant was to stay at Abode for ninety days, at which time he would be released to the year-long aftercare program.

Appellant did well in Abode for the first 30 to 45 days. At that point, however, he refused to take his medications and refused to get out of bed. As his probation officer related:

> When asked what was wrong with him, he said he was sick. They asked him to get up so that they could take him to the hospital, at which time he told them that he didn't have a ride. They told him that they would provide him with a ride. Then he said he didn't have the money for the hospital. And again they told him there were programs for him, he wouldn't, you know, have to necessarily pay, and he continued to lay in bed, I believe, for a total of 15 days.

This behavior led to a scheduled team meeting between Appellant and the Abode staff on September 26, 2014. Appellant was argumentative, and claimed to be too sick to attend the meeting. He finally agreed to a "behavior contract" which specifically set out what he needed to do to get back on track to successfully complete the program. A few hours later, however, he refused to sign the contract, and Abode then asked that he be removed from the program.

Based on his discharge from Abode, the State moved to proceed with an adjudication of guilt. Appellant pled true to all the allegations in the State's motion (which would have included the claim that he was discharged from Abode for non-compliance with the program). At the hearing, the State called Laura Coker, who supervised Appellant's probation, and who testified to the circumstances of his removal from the program. She explained that there was nothing left for her to try in order to make Appellant's probation work. Other testimony and evidence from

3

the hearing provides additional insights into Appellant's problems.

By age four, Appellant had difficulty concentrating, and was later placed in special needs classes at school. He has been diagnosed with paranoia and schizophrenia. He would stare off into space, pace, refuse to eat, refuse to speak, or change his clothes. This behavior led his family to admit him five or six times to mental hospitals. Medications would only help for a short time. The medications also caused him to sleep all the time.

Appellant has a history of seizures. He hears voices and thinks the FBI is after him. The State had previously waived any community service requirement because Appellant could not sufficiently function to complete it. His mother and the probation officer agreed that Appellant is unemployable. He has never been in a position to live on his own, and if released, the only place he could go is with his mother. Medical records admitted at the hearing show that Appellant is on a number of medications which at times he was compliant in taking, and other times not. He also has a history of substance abuse, both with marijuana and amphetamines. He has been subject to an emergency commitment under Chapter 573 of the Mental Health Code based on findings that he posed a substantial risk of serious harm to himself or others. The finding was based on reports that he "has made threats to family members that he was going to physically hurt them as well as himself."[2]

At the conclusion of the hearing, the trial court adjudicated Appellant as guilty of the original offense, and orally pronounced a sentence of eight years' confinement. The trial judge did not include any fine in the oral pronouncement, but the written judgment which later

---

[2] His story fits hand in glove with the conclusion of a panel from the Council of State Governments Justice Center and the American Psychiatric Association Foundation that "[a]n estimated two million people with serious mental illnesses are booked into jail each year, making prevalence rates for people with serious mental illnesses in jails three to six times higher than for the general population. Almost three-quarters of these adults have co-occurring substance use disorders." "On the Over-Valuation of Risk for People with Mental Illnesses," Fall 2015 reprinted at https://csgjusticecenter.org/wp-content/uploads/2016/03/JC_MH-Consensus-Statements.pdf (last visited April 19, 2016).

followed included a $1,000 fine.

## ISSUES ON APPEAL

Appellant raises three points for our consideration. In his first point of error, he contends that the sentence of eight years is grossly disproportionate to the offense committed, and as such is cruel and unusual both under the state and federal constitutions. The State responds to this claim on the merits, and additionally contends that the argument is forfeited as it was not raised below. In the second point of error, Appellant argues that the evidence was insufficient to show that he violated any condition of his community supervision. The State responds that the evidence is sufficient, but by pleading true to the motion to adjudicate, an evidentiary review is foreclosed. Finally, Appellant complains that the $1,000 fine as contained in the judgment must be deleted as it was not included in the oral pronouncement of sentence. The State concedes this point and urges that we reform the judgment accordingly.

## GROSS DISPROPORTIONALITY

Appellant's first point complains that the eight year sentence is grossly disproportionate to the offense. In somewhat differing verbiage, both the United States and Texas Constitutions prohibit cruel and/or unusual punishment. The federal constitution prohibits "cruel and unusual punishment" while the Texas constitution prohibits "cruel or unusual punishment." *Cf.* U.S. Const. amend. VIII *with* Tex. Const. art I, § 13. There is no significant difference, however, in the protections afforded by either constitutional protection. *See Cantu v. State*, 939 S.W.2d 627, 645 (Tex.Crim.App. 1997); *Duran v. State*, 363 S.W.3d 719, 723 (Tex.App.--Houston [1st Dist.] 2011, pet. ref'd). Accordingly, we consider Appellant's state and federal constitutional claims side by side.

"The concept of proportionality is central to the Eighth Amendment." *Graham v.*

*Florida*, 560 U.S. 48, 59, 130 S.Ct. 2011, 2021, 176 L.Ed.2d 825 (2010). Embodied in the Constitution's ban on cruel and unusual punishments is the "precept of justice that punishment for crime should be graduated and proportioned to [the] offense." *Weems v. United States,* 217 U.S. 349, 367, 30 S.Ct. 544, 549, 54 L.Ed. 793 (1910)(sentence of 15 years to hard and "painful" labor for submitting false invoice held cruel and unusual). But when a punishment falls within a legislatively prescribed range, the judge or jury's selection of a particular sentence is generally unassailable, subject only to "exceedingly rare" circumstances when the sentence is grossly disproportional. *Barrow v. State*, 207 S.W.3d 377, 381 (Tex.Crim.App. 2006). And there is no doubt here that the eight year sentence fell within punishment range for this crime. TEX.PENAL CODE ANN. § 22.01(b)(1)(West Supp. 2016)(assault on public official is third degree felony); TEX.PENAL CODE ANN. § 12.34(a)(West 2011)("An individual adjudged guilty of a felony of the third degree shall be punished by imprisonment in the Texas Department of Criminal Justice for any term of not more than 10 years or less than 2 years.").

At the outset, Appellant did not object below that the sentence was constitutionally disproportional. A party must preserve error, even many constitutional errors, with a proper objection. *Clark v. State*, 365 S.W.3d 333, 339 (Tex.Crim.App. 2012); *Fuller v. State*, 253 S.W.3d 220, 232 (Tex.Crim.App 2008)("[A]lmost all error--even constitutional error--may be forfeited if the appellant failed to object"); TEX.R.APP.P. 33.1(a)(1)(A). A defendant's rights fall into one of three categories: absolute rights (which cannot be forfeited by inaction); non-forfeitable rights (which can be waived but only by plainly, freely, and intelligently made action); and forfeitable rights (which must be requested and otherwise preserved). *Garza v. State*, 435 S.W.3d 258, 262-63 (Tex.Crim.App. 2014), *citing Marin v. State*, 851 S.W.2d 275 (Tex.Crim.App. 1993), *overruled on other grounds by Cain v. State,* 947 S.W.2d 262

(Tex.Crim.App. 1997).

In *Garza,* for instance, a juvenile defendant was sentenced to life without the possibility of parole for a murder that he committed. 435 S.W.3d at 259. The United States Supreme Court, however, had held that such sentences for juveniles violate the Eighth Amendment. *Miller v. Alabama*, ___U.S.___, 132 S.Ct. 2455, 2464, 183 L.Ed.2d 407 (2012). Garza did not raise the *Miller* argument at trial, and the court of appeals held he waived it. 435 S.W.3d at 260. The Court of Criminal Appeals determined held that "substantive status-based or individualized-sentencing claims under the Eighth Amendment and embraced by *Miller* are not forfeited by inaction." *Id.* at 262-63.

Appellant is not arguing that a categorical rule such as that articulated in *Miller* directly controls the outcome of this case. Instead, he argues that the trial court erred in assessing too great a sentence within the parameters of what the Legislature allows for this crime. Disproportionality is a matter that must be raised to the trial court, else it is forfeited on appeal. *See Harrington v. State*, 08-13-00224-CR, 2014 WL 3783960, at *2 (Tex.App.--El Paso July 31, 2014, no pet.)(not designated for publication); *Crawford v. State*, No. 02-04-00299-CR, 2005 WL 1477958, at *4 (Tex.App.--Fort Worth June 23, 2005, pet. ref'd)(mem. op.)(not designated for publication); *Jackson v. State*, 989 S.W.2d 842, 844 (Tex.App.--Texarkana 1999, no pet.); *Keith v. State*, 975 S.W.2d 433, 433-34 (Tex.App.--Beaumont 1998, no pet.); *Solis v. State*, 945 S.W.2d 300, 301 (Tex.App.--Houston [1st Dist.] 1997, pet. ref'd); *Rodriguez v. State*, 917 S.W.2d 90, 92 (Tex.App.--Amarillo 1996, pet. ref'd); *Cruz v. State*, 838 S.W.2d 682, 687 (Tex.App.--Houston [14th Dist.] 1992, pet. ref'd); *Quintana v. State*, 777 S.W.2d 474, 479 (Tex.App.--Corpus Christi 1989, pet. ref'd).

But even if we reached the merits, we would overrule the issue based on the record here.

The test for disproportionality is gleaned from two United States Supreme Court cases. The first is *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), a case involving a life sentence assessed against a defendant convicted of passing a worthless $100 check. The defendant had several other prior convictions for non-violent offenses. *Id.* at 296-297, 303, 103 S.Ct. at 3013, 3016. The court found the sentence too harsh, relying on a three-factor test looking to: (1) the gravity of the offense relative to the harshness of the penalty, (2) the sentences imposed for other crimes in the jurisdiction, and (3) the sentences imposed for the same crime in other jurisdictions. *Id*. at 292, 103 S.Ct. at 3010.

Several years later in *Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), the court upheld a life without parole sentence for possession of a large quantity of cocaine. The Court was sharply divided with Justice Kennedy's concurring opinion controlling the outcome. That concurrence utilizes *Solem*'s three factors, but establishes that the first factor--comparing the gravity of the offense and the severity of the sentence--is a gateway through which the defendant must first pass before moving to the later factors. 501 U.S. at 1005, 111 S.Ct. 2680 (Kennedy, J., concurring). "[I]n the rare case in which [this] threshold comparison . . . leads to an inference of gross disproportionality" the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions. *Id.*

Following *Harmelin,* the Fifth Circuit Court of Appeals subsequently adopted Justice Kennedy's modified *Solem* test. *See McGruder v. Puckett,* 954 F.2d 313, 316 (5th Cir.), *cert. denied,* 506 U.S. 849, 113 S.Ct. 146, 121 L.Ed.2d 98 (1992). This modified *Solem* test has been applied by several of our sister courts of appeals. *See Oglesby v. State*, 07-15-00002-CR, 2015 WL 5302466, at *2-4 (Tex.App.--Amarillo Sept. 10, 2015, no pet.)(not designated for

8

publication); *Valdez v. State*, 10-12-00410-CR, 2014 WL 505306, at *4 (Tex.App.--Waco Feb. 6, 2014, pet. ref'd)(mem. op.)(not designated for publication); *Winchester v. State*, 246 S.W.3d 386, 389 (Tex.App.--Amarillo 2008, pet. ref'd)(citing additional cases); *Moore v. State*, 54 S.W.3d 529, 541-42 (Tex.App.--Fort Worth 2001, pet. ref'd).

Here, Killian pled guilty to assault on a public servant. There is almost no information in the record about the crime itself, other than the indictment which alleges that Killian kicked a jailer in the genitals while the jailer was discharging an official duty.[3] We cannot conclude that the prison term assessed here, which is within the legislatively set limits, is somehow disproportionate to the gravity of that offense. *See Hanford v. State*, No. 02-12-00384-CR, 2013 WL 3771342, at *1 (Tex.App.--Fort Worth, Jul. 18, 2013, pet. ref'd)(mem. op.)(not designated for publication)(seven-year sentence is not grossly disproportionate to the offense of assault on a public servant); *Houston v. State*, No. 04-12-00242-CR, 2013 WL 441790, at *2 (Tex.App.--San Antonio Feb. 6, 2013, pet. dism'd, untimely filed)(mem. op.)(not designated for publication)(same); *McMillian v. State*, No. 06-05-00201-CR, 2005 WL 2978444, at *1 (Tex.App.--Texarkana, Nov. 7, 2005, no pet.)(mem. op.)(not designated for publication)(same). Because the sentence is not grossly disproportionate for the charged offense, we need not address the remaining factors under the *Solem* test.

Appellant spends the majority of his briefing urging that his mental illness changes the calculus. However sympathetic we may be to his situation, Appellant must first demonstrate that the sentence is grossly disproportional to the crime of an assault on a public officer. He also assumes that the offense being punished is the probation condition that he violated. We think the proper inquiry is whether the sentence is grossly disproportional to the original crime for which

---

[3] Appellant himself at the hearing suggested to the trial court that he may have only kicked the officer while he was suffering a seizure. We decline to revisit the merits of his guilt or innocence. Appellant pled guilty to the charge, which would necessarily include the *mens rea* for the offense.

9

he was convicted. The probation violation is merely the circumstance which requires the trial judge to revisit the originally deferred adjudication of guilt.

Because Appellant has not shown this case fall into those "exceedingly rare" and "extreme" cases for gross disproportionality, *Harmelin,* 501 U.S. 1001, 111 S.Ct. 2680 (Kennedy, J., concurring), we overrule the first issue.

## SUFFICIENCY OF THE EVIDENCE

Appellant next argues that the evidence was insufficient to show that he violated a condition of his probation, and as such, the conviction violates his fundamental rights. The specific violation at issue was whether Appellant was discharged from Abode on September 26, 2014, for non-compliance with the program. Appellant pled true to that violation. Moreover, his parole officer testified that he was discharged due to his refusal to sign a behavioral contract, occasioned by his lying in bed for fifteen days and refusing to take his medications.

"The question at a revocation hearing is whether the appellant broke the contract he made with the court after the determination of his guilt." *Kelly v. State*, 483 S.W.2d 467, 469 (Tex.Crim.App. 1972). While defendants are not entitled to probation as a matter of right, once a defendant is placed on probation in lieu of other punishment, this conditional liberty "should not be arbitrarily withdrawn by the court . . . ." *DeGay v. State*, 741 S.W.2d 445, 449 (Tex.Crim.App. 1987). Accordingly, we review orders revoking community supervision under the abuse of discretion standard. *Leonard v. State*, 385 S.W.3d 570, 576 (Tex.Crim.App. 2012). A trial court has discretion to revoke a criminal defendant's community supervision when a preponderance of the evidence supports the State's allegation that the defendant violated a condition of probation. *Rickels v. State*, 202 S.W.3d 759, 763-64 (Tex.Crim.App. 2006), *quoting Scamardo v. State*, 517 S.W.2d 293, 298 (Tex.Crim.App. 1974).

Killian's community supervision was conditioned upon his successful completion of the substance abuse program. With regard to the sufficiency challenge, the State reminds us of a line of cases supporting the proposition that pleading true to the allegations in the motion to revoke itself constitutes sufficient evidence to support the revocation. *See Wilson v. State*, 671 S.W.2d 524, 526 (Tex.Crim.App. 1984)("[A] plea of 'true' does constitute evidence and sufficient proof to support the enhancement allegation."); *Cole v. State*, 578 S.W.2d 127, 128 (Tex.Crim.App. 1979)("[S]ufficiency of the evidence could not be challenged in the face of a plea of true."); *Mitchell v. State,* 482 S.W.2d 221, 222-23 (Tex.Crim.App. 1972)(hearing on revocation is not "mandatory" when defendant pleads true to revocation allegations). The Court of Criminal Appeals has cautioned, however, that these cases need to be read in light of *Marin v. State* which came after them, and which establishes that some rights are non-waivable. *See Gipson v. State*, 383 S.W.3d 152, 156 (Tex.Crim.App. 2012)(remanding case to court of appeals to decide whether pleading true to revocation motion which asserted a failure to pay a fine, waived statutory and constitutional ability-to-pay protections).

We understand Appellant to argue that his mental incapacity prevented him from completing the program, and perhaps like a probationer who cannot be imprisoned for not paying a fine that he cannot afford, a mentally incapacitated person cannot be imprisoned for not completing a program beyond his capabilities.[4] Appellant cites no legal authority directly supporting that proposition. Nor does the record conclusively show that Appellant could not complete the SAFP and aftercare program. No expert testimony was presented on Appellant's ability to complete the program. At most, we have his family members' lay perspective on his problems, and some medical records containing a mental health diagnosis. Balanced against that

_____

[4] *See* Appellant's Brief at 26 ("Requiring someone to conform to conditions of conduct that are beyond them is as unrealistic as requiring a challenged person to perform in the capacity of someone not challenged, in any endeavor.").

11

evidence was the fact that Appellant was capable of successfully completing the nine month residential incarceration part of the program. He also completed 30 to 45 days of the Abode program. Accordingly, the trial court had evidence before it to conclude that Appellant had the *ability* to complete the program, and we defer to that implicit finding. *See Trevino v. State*, 08-13-00235-CR, 2015 WL 180390, at *2 (Tex.App.--El Paso Jan. 14, 2015, no pet.)(not designated for publication)(evidence did not show that defendant was physically unable to complete terms of probation); *Sadler v. State*, 08-12-00203-CR, 2014 WL 3887963, at *2-3 (Tex.App.--El Paso Aug. 8, 2014, no pet.)(not designated for publication)(evidence did not show that defendant lacked the mental capacity to understand terms of his community supervision). Without conclusive evidence that Appellant's particular mental health issues precluded him from completing the SAFP program, the only remaining question is whether Appellant was discharged for failing to follow that program. The evidence amply supports that conclusion, as does his plea of true. Appellant's second issue is overruled.

## ADDITION OF THE FINE

In his final point of error, Appellant complains that the written judgment of conviction adds a $1,000 fine that was not included in the oral pronouncement of judgment. The State concedes the error. *See Taylor v. State*, 131 S.W.3d 497, 499-500 (Tex.Crim.App. 2004)(for deferred adjudication, the oral pronouncement of sentence controls over the written judgment of conviction if there is a conflict). We accordingly sustain Appellant's third point of error and reform the judgment of conviction to delete the $1,000 fine, but affirm in all other respects.

December 21, 2016

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)

12