ANN CRAWFORD McCLURE, Chief Justice
This is an appeal from a guilty plea where there was no plea bargain, but only a recommendation from the State's attorney. The trial court accepted the guilty plea, and after hearing testimony about the crime, assessed a sentence well in excess of the recommendation. Appellant challenges that sentence as excessive, and through his appellate attorney, contends his trial attorney provided constitutionally ineffective assistance of a counsel. We affirm.
FACTUAL SUMMARY
Appellant was originally indicted for aggravated assault on a family member with a deadly weapon. The indictment alleged that Appellant caused serious bodily injury to Rene Caso. Testimony would later reveal that Caso lost his right eye as a result of the assault. The original indictment identified the deadly weapon as either a vase, a tissue box, or Appellant's hand. The State later struck the deadly weapon language from the indictment. But the State also enhanced the punishment range by claiming that Appellant had previously been convicted of another felony offense some seven years before the date of the aggravated assault.
On July 20, 2015, Appellant entered a non-negotiated guilty plea and pled true to the enhancement allegation. While there was no formal plea bargain in this case, the State's attorney had apparently made a recommendation to the court that Appellant should be sentenced to fourteen years.[1] The plea paperwork admonished *630 Appellant that the punishment range for the crime was five to ninety-nine years or a life sentence, and a fine not to exceed $10,000.00. Appellant was also warned in writing that the trial court could assess punishment anywhere within the range allowed by law. The court accepted the plea and set the matter for a sentencing hearing which was held on August 13, 2015.
At the sentencing hearing, the trial court orally admonished Appellant that the possible range of punishment was from five to ninety-nine years or life imprisonment along with the fine. Appellant said he understood, but when first asked if he wished to continue with his open plea, he stated: "I would then-I would then have to go to trial because I did not declare myself guilty to something like that. I think I'd rather go to trial." The trial court then went off the record, which was then followed by this exchange:
THE COURT: Back on the record. Mr. Reyes, we have been off the record, and the Court has attempted to explain to you what an aggravated assault is, that if there is an allegation of serious bodily injury, that makes the assault aggravated. Now, the State has stricken the language concerning a deadly weapon.
THE DEFENDANT: Yes.
THE COURT: But because you have a prior felony conviction, that elevates your offense to a first-degree punishment range of from 5 years to 99 years or life imprisonment.
THE DEFENDANT: Yes.
THE COURT: Knowing that, would you like to continue with this open plea today?
THE DEFENDANT: Okay. Yes.
The court then heard testimony from Rene Caso (the victim), Claudia Rodas (the fiancé of Mr. Caso), and Julia Castellanos (Rene Caso's mother). The trial court also took testimony from Appellant. After argument of counsel, the trial court assessed a forty year prison sentence and a $5,000.00 fine.
Appellant's retained trial counsel filed a notice of appeal, but no other post-conviction pleadings. Counsel moved to withdraw on the last business day before a motion for new trial was due to be filed.[2] The motion to withdraw claimed that trial counsel had no experience in criminal appellate matters, and that because of Appellant's indigent status, he was entitled to court appointed appellate counsel. The trial court appointed Appellant's present appellate counsel on September 15, 2015, one day after any motion for new trial was due.
ISSUES ON APPEAL
Appellant raises three issues for our consideration. In his first issue, he contends that the forty year sentence is grossly disproportionate to the offense committed, and as such is cruel and unusual under the federal constitution. The State responds *631 to this claim on the merits, and additionally contends that the argument is forfeited as it was not raised below. In his second issue, Appellant argues that his trial counsel provided ineffective assistance in five specific ways which we detail below. In his third issue, Appellant contends that he was denied his constitutional right to counsel during a critical stage of the proceedings because his trial counsel moved to withdraw just before a motion for a new trial was due to be filed.
GROSS DISPROPORTIONALITY
Appellant's first issue complains that the forty year sentence is grossly disproportionate to the offense. In somewhat differing verbiage, both the United States and Texas Constitutions prohibit cruel and/or unusual punishment. The federal constitution prohibits "cruel and unusual punishment" while the Texas constitution prohibits "cruel or unusual punishment." Cf. U.S. Const. amend. VIIIwith Tex. Const. art I, § 13. There is no significant difference, however, in the protections afforded by either constitutional protection. See Cantu v. State , 939 S.W.2d 627, 645 (Tex.Crim.App. 1997) ; Duran v. State , 363 S.W.3d 719, 723 (Tex.App.-Houston [1st Dist.] 2011, pet. ref'd).
"The concept of proportionality is central to the Eighth Amendment." Graham v. Florida , 560 U.S. 48, 59, 130 S.Ct. 2011, 2021, 176 L.Ed.2d 825 (2010). Embodied in the Constitution's ban on cruel and unusual punishments is the "precept of justice that punishment for crime should be graduated and proportioned to [the] offense." Weems v. United States, 217 U.S. 349, 367, 30 S.Ct. 544, 549, 54 L.Ed. 793 (1910) (sentence of 15 years to hard and "painful" labor for submitting false invoice held cruel and unusual). But when a punishment falls within a legislatively prescribed range, the judge or jury's selection of a particular sentence is generally unassailable, subject only to "exceedingly rare" circumstances when the sentence is grossly disproportional. Barrow v. State , 207 S.W.3d 377, 381 (Tex.Crim.App. 2006). And there is no doubt here that the forty year sentence fell within the punishment range for this crime. Tex.Penal Code Ann. § 22.02(b) (West 2011)(aggravated assault is generally a second degree felony); Tex.Penal Code Ann. § 12.42(b) (West Supp. 2016)(second degree felony punished as first degree felony when defendant has prior felony conviction); Id. at § 12.32(a)(West 2011) ("An individual adjudged guilty of a felony of the first degree shall be punished by imprisonment in the Texas Department of Criminal Justice for life or for any term of not more than 99 years or less than 5 years.").
As the State points out, Appellant did not object that the sentence was constitutionally disproportional. A party must preserve error, even many constitutional errors, with a proper objection. Clark v. State , 365 S.W.3d 333, 339 (Tex.Crim.App. 2012) ; Fuller v. State , 253 S.W.3d 220, 232 (Tex.Crim.App 2008) ("[A]lmost all error-even constitutional error-may be forfeited if the appellant failed to object"); Tex.R.App.P. 33.1(a)(1)(A). A defendant's rights fall into one of three categories: absolute rights (which cannot be forfeited by inaction); non-forfeitable rights (which can be waived but only by plainly, freely, and intelligently made action); and forfeitable rights (which must be requested and otherwise preserved). Garza v. State , 435 S.W.3d 258, 262-63 (Tex.Crim.App. 2014), citing Marin v. State , 851 S.W.2d 275 (Tex.Crim.App. 1993), overruled on other grounds by Cain v. State, 947 S.W.2d 262 (Tex.Crim.App. 1997).
In Garza, for instance, a juvenile defendant was sentenced to life without the *632 possibility of parole for a murder that he committed. 435 S.W.3d at 259. The United States Supreme Court, however, had held that such sentences for juveniles violate the Eighth Amendment. Miller v. Alabama , 567 U.S. 460, 132 S.Ct. 2455, 2464, 183 L.Ed.2d 407 (2012). Garza did not raise the Miller argument at trial, and the court of appeals held that he waived it. 435 S.W.3d at 260. The Court of Criminal Appeals, however, held that "substantive status-based or individualized-sentencing claims under the Eighth Amendment and embraced by Miller are not forfeited by inaction." Id. at 262-63.
Appellant, however, is not arguing that a categorical rule such as that articulated in Miller directly controls the outcome of this case. Instead, he argues that the trial court erred in assessing too great a sentence within the parameters of what the Legislature allows for this crime. Disproportionality is a matter that must be raised to the trial court, else it is forfeited on appeal. See Harrington v. State , 08-13-00224-CR, 2014 WL 3783960, at *2 (Tex.App.-El Paso July 31, 2014, no pet.) (not designated for publication); Jackson v. State , 989 S.W.2d 842, 844 (Tex.App.-Texarkana 1999, no pet.) ; Keith v. State , 975 S.W.2d 433, 433-34 (Tex.App.-Beaumont 1998, no pet.) ; Solis v. State , 945 S.W.2d 300, 301 (Tex.App.-Houston [1st Dist.] 1997, pet. ref'd) ; Rodriguez v. State , 917 S.W.2d 90, 92 (Tex.App.-Amarillo 1996, pet. ref'd) ; Cruz v. State , 838 S.W.2d 682, 687 (Tex.App.-Houston [14th Dist.] 1992, pet. ref'd) ; Quintana v. State , 777 S.W.2d 474, 479 (Tex.App.-Corpus Christi 1989, pet. ref'd). The Dallas Court of Appeals has similarly found a forfeiture when no objection was lodged to a purportedly disproportionate sentence. Bell v. State , 326 S.W.3d 716, 724 (Tex.App.-Dallas 2010, pet. dism'd as untimely) ; Castaneda v. State, 135 S.W.3d 719, 723 (Tex.App.-Dallas 2003, no pet.).[3]
But even if we were to reach the merits, we would overrule the issue based on the record here. The test for disproportionality is gleaned from two United States Supreme Court cases. The first is Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), a case involving a life sentence assessed against a defendant convicted of passing a worthless $100 check. The defendant had several other prior convictions for non-violent offenses. Id. at 296-297, 303, 103 S.Ct. at 3013, 3016. The court held the sentence too harsh, relying on a three factor test looking to: (1) the gravity of the offense relative to the harshness of the penalty, (2) the sentences imposed for other crimes in the jurisdiction, and (3) the sentences imposed for the same crime in other jurisdictions. Id. at 292, 103 S.Ct. at 3010.
Several years later in Harmelin v. Michigan, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), the court upheld a life without parole sentence for possession of a large quantity of cocaine. The court was sharply divided and Justice Kennedy's concurring opinion controlled the outcome. That concurrence utilizes Solem 's three factors, but establishes that the first factor-comparing the gravity of the offense and the severity of the sentence-is a gateway through which the defendant must first pass before even getting to the later factors. 501 U.S. at 1005, 111 S.Ct. at 2707 (Kennedy, J., concurring). "[I]n the rare case in which [this] threshold comparison ... leads to an inference of gross *633 disproportionality" the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions. Id.
Following Harmelin, the Fifth Circuit Court of Appeals adopted Justice Kennedy's modified Solem test. McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir.), cert. denied, 506 U.S. 849, 113 S.Ct. 146, 121 L.Ed.2d 98 (1992). This modified Solem test has been applied by several of our sister courts of appeals and more recently by the Texas Court of Criminal Appeals. State v. Simpson , 488 S.W.3d 318, 323 (Tex.Crim.App. 2016) ; Oglesby v. State , 07-15-00002-CR, 2015 WL 5302466, at *2-4 (Tex.App.-Amarillo Sept. 10, 2015, no pet.) (not designated for publication); Valdez v. State , 10-12-00410-CR, 2014 WL 505306, at *4 (Tex.App.-Waco Feb. 6, 2014, pet. ref'd) (mem. op.)(not designated for publication); Winchester v. State , 246 S.W.3d 386, 389 (Tex.App.-Amarillo 2008, pet. ref'd) (citing additional cases); Moore v. State , 54 S.W.3d 529, 541-42 (Tex.App.-Fort Worth 2001, pet. ref'd) ; Lackey v. State , 881 S.W.2d 418, 421 (Tex.App.-Dallas 1994, pet. ref'd).
Turning to the gateway factor-comparing the gravity of the offense and the severity of the sentence-we consider the harm caused or threatened to the victim or society, the culpability of the offender, and the offender's prior adjudicated and unadjudicated offenses. Solem, 463 U.S. at 291-92, 103 S.Ct. at 3010 ; Simpson , 488 S.W.3d at 323 ; Moore , 54 S.W.3d at 542. Because Appellant's punishment was enhanced by a prior conviction, the sentence is measured not only against the current crime, "but also on the propensities he has demonstrated over a period of time during which he has been convicted of and sentenced for other crimes." Rummel v. Estelle, 445 U.S. 263, 284, 100 S.Ct. 1133, 1144, 63 L.Ed.2d 382 (1980) ; McGruder, 954 F.2d at 316 ; Lackey , 881 S.W.2d at 421.
The facts presented to the trial court here demonstrate that the harm from the assault was significant. The victim referred to himself as Appellant's step-son because Appellant had been living with Caso's mother for almost ten years.[4] Caso discovered the week before the assault, and confided in his mother, that Appellant was cheating on her. Caso lived at the couple's apartment. On the morning of the assault he was sitting on a couch watching television. Though some of the facts surrounding the incident were disputed, Caso testified that Appellant approached him and started screaming at him to get out of the house, apparently upset that Caso had meddled in the couple's affairs. Appellant grabbed him by the shirt and started hitting him, then threw him to the floor. At that point, Appellant picked up a knife. Caso's mother, who was in the apartment at the time, intervened and retrieved the knife from Appellant.
This initial tussle abated and Caso decided to move out of the apartment. With his mother's help he began taking his possessions out to a car. When he came back into the apartment to get some additional possessions, Appellant was waiting for him behind a door and struck him on the back of the head with a glass vase. Caso fell to the floor, losing consciousness and when he awoke, Appellant was on top of him pressing and bouncing his knee into Caso's *634 head, just at the eye socket. Appellant eventually got up and left the apartment.
Caso's mother testified at the hearing as well. She recalled that Appellant was up late the evening before the assault. Around 2:30 a.m., she saw Appellant snorting cocaine and the couple had an argument, after which she went to bed. That next morning, Appellant was agitated with Caso because he had found out about, and told her of the affair. Appellant confronted Caso in the living room and then grabbed Caso and slammed him up against the wall. She also recalled having to take a knife away from Appellant. She got between the two and managed to separate them. Appellant went to his room, then she and Caso began moving Caso's things.
Later when she came back inside the apartment after having loaded some of her son's items in the car, she saw Appellant was on top of her son striking him with one hand and yelling several times "I'm gonna kill you." Caso was limp and Appellant was continuing to strike him. Caso testified that during the entire episode he never struck back and only put his arms up in a defensive posture. Her testimony suggests that both Caso and Appellant were exchanging blows.
Caso spent the next four days in a hospital. A cut on the back of his head took seven stitches to close. Efforts to save his right eye failed, and he was given the choice of losing that eye, or possibly losing sight in both eyes. Following removal of his right eye, he suffered from depression, panic attacks, and anxiety. Caso had difficulty holding employment and driving a vehicle due to the panic attacks and he was continuing to see a therapist at the time of the sentencing hearing.
Appellant admitted to a previous felony conviction for tampering with government records in 2006 for which he served four years in prison. He also admitted to previous arrests for grand theft and burglary in 1999, solicitation in 2003, fraudulent use of a credit card in 2004, unlawful use of a motor vehicle in 2005, credit card abuse in 2006, and giving false identifying information in 2006. While awaiting trial in this case, jail reports indicated he assaulted another inmate with a food tray, and threatened to harm someone else if he were not moved to another part of the jail.
Appellant advances several arguments in support of the disproportionality claim. First, he contends that this event was his first and only violent encounter. But even if it were, the act in itself was remarkable enough to justify the sentence. Caso sustained a life-long significant injury. The circumstance of continuing to strike a person who is already limp, particularly while shouting "I am going to kill you" is disturbing beyond the pale. Doing so after having already served a four year prison term more than suggests Appellant is a threat to society and has little respect for its rules.
Appellant also relies on his own version of the events in applying the first prong of the disproportionality test. Appellant testified that Caso started the fight by first pushing Appellant. He claimed that they had several small skirmishes. Appellant contended that it was then Caso's mother who forced Caso out of the apartment. Caso somehow got back inside and picked up a ceramic ornament and threatened Appellant with it. Appellant then claims he grabbed a ceramic cover for tissue paper to use in defense. Appellant attributes Caso's eye injury to Caso falling and striking his face on a table during the fight.
Neither Appellant nor the State suggests what standard applies to resolve disputes in the evidence at the sentencing hearing. We conclude that it must be a deferential standard viewing the evidence *635 in the light most favorable to the sentence.[5] The trial court had the benefit of seeing both Caso and Appellant in person and witnessing their demeanor.[6] Caso's and his mother's testimony largely contradicted Appellant's version of events. We defer to the trial court's apparent resolution of those conflicts against Appellant. In that light, we cannot conclude that the prison term assessed here, which is within the legislatively set limits, is somehow disproportionate to the gravity of the offense.
Finally, Appellant compares the sentence here with the sentences imposed in other aggravated assault cases. But we would engage in that kind of comparison only if Appellant overcame the first Solem test. Harmelin , 501 U.S. at 1005, 111 S.Ct. 2680 ; Lackey , 881 S.W.2d at 420-21. Accordingly, there is no reason to compare Appellant's sentence to those in other reported assault cases in Texas or elsewhere. Simpson , 488 S.W.3d at 323.
Only twice has the United States Supreme Court held in a non-capital case that a prison term imposed on an adult was constitutionally disproportionate. See Simpson , 488 S.W.3d at 323 (identifying Weems and Solem as those two instances). Appellant fails to convince us that the sentence here falls at that narrow end of the spectrum. It simply does not present one of those "exceedingly rare" and "extreme" cases for which gross disproportionality should apply. Harmelin, 501 U.S. at 1001, 111 S.Ct. 2680 (Kennedy, J., concurring). Appellant's first issue is overruled.
INEFFECTIVE ASSISTANCE OF COUNSEL
Appellant next argues that his trial counsel provided him ineffective assistance in the following ways: (1) failing to inform Appellant that the deadly weapon allegation had not actually been dropped from the case; (2) allowing hearsay statements about Appellant's affair with another women at the punishment hearing; (3) abandoning defensive issues in favor of pursuing an open guilty plea; (4) failing to object to the sentence as grossly disproportionate; and (5) abandoning Appellant at a critical stage of the proceeding. He also claims the cumulative effect of these omissions justify reversal. Under the standards governing ineffective assistance claims, we disagree.
Framework for Review
To prevail on a claim of ineffective assistance of counsel, Appellant must establish by a preponderance of evidence that: (1) his attorney's performance was deficient; and that (2) his attorney's deficient performance deprived him of a fair trial.
*636 Strickland v. Washington , 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984) ; Ex parte Chandler , 182 S.W.3d 350, 353 (Tex.Crim.App. 2005). Appellant must satisfy both Strickland components, and the failure to show either deficient performance or prejudice will defeat his ineffectiveness claim. Perez v. State , 310 S.W.3d 890, 893 (Tex.Crim.App. 2010) ; Rylander v. State , 101 S.W.3d 107, 110-11 (Tex.Crim.App. 2003).
Under the first prong of the Strickland test, the attorney's performance must be shown to have fallen below an objective standard of reasonableness. Thompson v. State , 9 S.W.3d 808, 812 (Tex.Crim.App. 1999). Stated otherwise, he must show his counsel's actions do not meet the objective norms for professional conduct of trial counsel. Mitchell v. State , 68 S.W.3d 640, 642 (Tex.Crim.App. 2002). Under the second prong, Appellant must establish that there is a reasonable probability that but for his attorney's deficient performance, the outcome of the case would have been different. See Strickland , 466 U.S. at 694, 104 S.Ct. at 2069 ; Thompson , 9 S.W.3d at 812. "Reasonable probability" is that which is "sufficient to undermine confidence in the outcome." Strickland , 466 U.S. at 694, 104 S.Ct. at 2068 ; Jackson v. State , 973 S.W.2d 954, 956 (Tex.Crim.App. 1998).
A direct appeal is usually an inadequate vehicle for raising an ineffective assistance claim because the record is generally undeveloped. Goodspeed v. State , 187 S.W.3d 390, 392 (Tex.Crim.App. 2005) ; Thompson , 9 S.W.3d at 814, n.6. We presume that the attorney's representation fell within the wide range of reasonable and professional assistance. Mallett v. State , 65 S.W.3d 59, 63 (Tex.Crim.App. 2001), citing Tong v. State , 25 S.W.3d 707, 712 (Tex.Crim.App. 2000). Ineffective assistance claims must be firmly founded in the record to overcome this presumption. Thompson , 9 S.W.3d at 813. When the record is silent and does not provide an explanation for the attorney's conduct, the strong presumption of reasonable assistance is not overcome. Rylander , 101 S.W.3d at 110-11 (noting that "trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective"); Jackson v. State , 877 S.W.2d 768, 771 (Tex.Crim.App. 1994). And that is the rub for the vast majority of direct appeals raising ineffective assistance of counsel-the realities of even obtaining a trial transcript or affidavits in time to meet the new trial motion deadline often preclude an adequate record. See Trevino v. Thaler , 569 U.S. 413, 133 S.Ct. 1911, 1918-19, 185 L.Ed.2d 1044 (2013) (discussing procedural barriers under Texas law to developing adequate record for direct appeals of ineffectiveness claims). That leaves for direct appeals only those few situations where counsel's conduct is so outrageous that no competent attorney would have engaged in it. Goodspeed , 187 S.W.3d at 392. With these standards in mind, we take up each of Appellant's complaints about his trial counsel.
Use of a Deadly Weapon
Aggravated assault may be committed in only two ways: (1) by causing serious bodily injury; or (2) by using or exhibiting a deadly weapon during the commission of the assault. Tex.Penal Code Ann. § 22.02(a)(1),(2). Each of these necessarily involve the use of a deadly weapon. Blount v. State , 257 S.W.3d 712, 714 (Tex.Crim.App. 2008). The first way of committing aggravated assault-causing serious bodily injury-necessarily implies the use of a deadly weapon, which is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex.Penal Code Ann. § 1.07(17)(B) (West Supp. 2016). The second *637 way of committing aggravated assault expressly describes use or exhibition of a deadly weapon.
In this case, the State indicted Appellant for aggravated assault both by causing serious bodily injury and by use a deadly weapon (here by using either a vase, a tissue box, or Appellant's hand). The State later deleted the express reference to a deadly weapon from the indictment. Appellant contends that his trial counsel erred in assuming, and presumably informing Appellant, that the deletion of the deadly weapon language carried some significance to the case. Appellant reasons that under Blount v. State , the mere allegation of a serious bodily injury carries with it an implicit allegation of use of a deadly weapon, so that the deadly weapon allegation never really went away.
The record does not reflect what Appellant's trial counsel actually told him about the deletion of the deadly weapon language. That gap in the record necessarily means that Appellant cannot meet the first Strickland test. He can hardly show his attorney failed to meet the standard of care for providing advice when he cannot show what advice was actually given. Moreover, the record affirmatively negates the prejudice element because whether the deadly weapon issue was in the case or not, the range of punishment was always going to be at least five to ninety-nine years, or life. And the trial court expressly informed Appellant of that punishment range on the record.
Aggravated assault is generally a second degree felony that carries a punishment range of two to twenty years. Tex.Penal Code Ann. § 22.02(b) (aggravated assault is generally a second degree felony); id. at § 12.33(a)(range of punishment). An aggravated assault may become a first degree felony when the defendant uses a deadly weapon. Id. at § 22.02(b)(1). In that sense, a deadly weapon finding is significant to a defendant. But the State here did not need the deadly weapon finding to reach the first degree felony punishment range. Because it enhanced the conviction with a prior felony to which Appellant pled true, the punishment range was already the same as a first degree felony. Id. at. § 12.42(b) (second degree felony punished as first degree felony when defendant has a prior felony conviction).[7] As we excerpt above, the trial court explained this to Appellant on the record, and he chose to proceed with the open plea. For that reason, we find no Strickland harm even if his counsel misunderstood the import of dropping the deadly weapon language from the indictment
Hearsay Statements
During the punishment phase, Caso testified that he learned that Appellant was cheating on his mother. He made this discovery when Appellant took Caso to the other woman's home to clean her carpets. Caso surmised the affair from statements that the other woman made to him. Appellant's counsel did not object. Appellant now contends that he was provided ineffective assistance because a competent attorney should have recognized the statement as hearsay and lodged that objection. He makes a similar claim about the police officers' reaction to the nature of Caso's *638 injury, which he also contends was hearsay admitted without objection.
With regard to statements about the affair, the parties spar over whether the statements were offered for the truth of the matter asserted (and thus either were, or were not, hearsay as defined by the Rules of Evidence). We think this argument misses the broader point. Parties might sometimes choose not to object to otherwise inadmissible evidence because it furthers their trial strategy. Thompson , 9 S.W.3d at 814. Part of Appellant's apparent strategy below was to show the assault occurred as part of a mutual fight between father and son-in-law. To have a fight, they needed something to fight about, which was the affair. Had Appellant excluded any mention of the affair, the record would have reflected only that Appellant got up in the morning after a late night of drinking and snorting cocaine, and then for no apparent reason started assaulting his son-in-law. The inference from that scenario is likely worse than informing the trial court that an affair was the impetus for these events. Because we cannot discount that allowing hearsay was part of a trial strategy, and the record does not show us otherwise, we conclude Appellant has failed to meet the first Strickland element. Thompson , 9 S.W.3d at 814 (record did not show reason why trial counsel failed to object to hearsay statements and thus failed to overcome presumption of reasonableness); Perilla v. State , 05-15-00051-CR, 2016 WL 1682170, at *4 (Tex.App.-Dallas Apr. 25, 2016, no pet. h.) (not designated for publication) (same); Rivero v. State , 08-02-00191-CR, 2004 WL 42625, at *7 (Tex.App.-El Paso Jan. 8, 2004, no pet.) (not designated for publication)(same).
Additionally, Appellant has failed to demonstrate prejudice. He has not shown that the trial court was unnaturally swayed by evidence of the affair so as to impose a sentence that she otherwise would not have imposed. The most Appellant can offer is that the trial court remarked on the cheating allegation in a comment made from the bench. In the same comment, however, the trial court stated "I'm not even concerned about whether he's cheating on the mother or not." Nor has Appellant demonstrated that the mother's statement about how the police officers reacted to Caso's eye injury had any effect on the sentence.[8] The State admitted some eleven photos depicting Caso's eye and other injuries, some taken the day of the assault. In assessing the seriousness of the injuries, the trial judge would have more likely relied on the photos admitted at the hearing than on some description of a non-verbal response from an unidentified police officer.
Abandonment of Defensive Issues
Appellant next claims that his trial counsel abandoned the potential defenses of self-defense or lack of voluntary conduct. These defenses were premised on Appellant's testimony at the punishment hearing that Caso started the fight, and that both he and Caso were exchanging *639 blows. In effect, Appellant claims his lawyer gave him bad advice during the plea process, convincing him to plead guilty rather than go to trial, or at least not obtaining a better arrangement in exchange for forgoing his chance of prevailing on these defenses at trial. He finds additional prejudice in the decision to plead out, because at the punishment hearing, the trial judge was able to hear allegations that Appellant had never worked a single day after immigrating to the United States some twenty years prior, and that Appellant tried to pay Caso not to testify against him.
Bad advice during plea negotiations can give rise to a finding that a trial attorney was ineffective if it deprives a defendant of a favorable plea. Lafler v. Coope r, 566 U.S. 156, 132 S.Ct. 1376, 1384, 182 L.Ed.2d 398 (2012) ; Missouri v. Frye , 566 U.S. 134, 132 S.Ct. 1399, 1408, 182 L.Ed.2d 379 (2012). On the record before us, however, we have no information on why Appellant entered an open plea of guilt rather than risk trial. We do not know what advice was actually given to Appellant about his defenses or his chances at trial. We do not know if Appellant or his counsel believed that he had a better chance of receiving a lesser sentence or probation from the trial court than a jury. We do not know if Appellant banked on his "son-in-law" not cooperating with the State. We do not know if Appellant's calculus was his own, or that of his trial counsel. And not knowing the answers to those basic questions, and perhaps others, leaves us little room but to apply the rationale from Rylander that Appellant has not overcome the presumption of competence. 101 S.W.3d at 110-11.
Failing to Object to the Sentence
Appellant next contends that his counsel was ineffective in not lodging an objection that the sentence imposed was grossly disproportional. As we explain above, the objection lacks merit, thus we conclude Appellant cannot show prejudice from its omission.
Seeking to Withdraw at a Critical Stage
Appellant further contends that his counsel was ineffective by moving to withdraw just before the deadline for filing a motion for new trial. He urges the same argument, along with the same authorities in Issue Three, there arguing that he was denied counsel at a critical juncture of the proceedings.
Appellant correctly points outs that under the Sixth Amendment, he is entitled to effective counsel at each critical stage of the proceeding. Mempa v. Rhay, 389 U.S. 128, 134, 88 S.Ct. 254, 257, 19 L.Ed.2d 336 (1967) ; Upton v. State, 853 S.W.2d 548, 553 (Tex.Crim.App. 1993). The time period in which to file a motion for new trial is a critical stage. Cooks v. State , 240 S.W.3d 906, 911 (Tex.Crim.App. 2007) ("Based on the foregoing, we decide, as a matter of federal constitutional law, that the time for filing a motion for new trial is a critical stage of the proceedings, and that a defendant has a constitutional right to counsel during that period.").
A motion for new trial was due to be filed by the 30th day following the pronouncement of the sentence in open court. Appellant's retained counsel moved to withdraw on the last business day before that deadline. There is no order in the record granting the motion to withdraw. The trial court appointed new counsel the day after a motion for new trial was due to be filed. While superficially appealing, Appellant's argument runs headlong into the rebuttable presumption that trial counsel continues to effectively represent the defendant in this critical phase.
*640 Smith v. State , 17 S.W.3d 660, 662 (Tex.Crim.App. 2000) and Oldham v. State, 977 S.W.2d 354 (Tex.Crim.App. 1998) (opinion on reh'g). The facts in Oldham bare repeating.
In Oldham , the defendant was represented at trial by counsel and was convicted and sentenced. She then filed a pro se notice of appeal and indigency. Id. at 355. The trial court informed the court of appeals that the attorney of record on appeal was "to be determined." Id. After the time to file a motion for new trial passed, the trial court appointed appellate counsel. Id. On appeal, the newly appointed appellate counsel argued that the appeal should be abated and the case remanded to the trial court to allow for an out-of-time motion for new trial. The defendant in Oldham claimed that she was denied effective assistance of counsel in the critical motion for new trial phase of the proceeding. Id. at 356.
The Texas Court of Criminal Appeals held, however, that the facts presented "[did] not rebut the presumption that the appellant was represented by counsel and that counsel acted effectively." Id. at 363 (citation omitted). Specifically, there was no evidence in the record to show "that trial counsel thought his duties were completed with the end of the trial, and had thereafter abandoned the appellant." Id. at 362. There was nothing in the record suggesting that the attorney had not discussed the merits of a motion for new trial and the defendant decided not to forgo filing the motion. Id. at 363. The court reaffirmed Oldham in Smith , which differed only in that the case arose out of a motion to adjudicate guilt, following a claimed violation of the terms of community supervision. 17 S.W.3d at 661.
The presumption in Oldham and Smith is rebuttable. Appellant contends he effectively rebutted the presumption based on his former trial counsel having filed a motion to withdraw on the eve of the motion for new trial deadline. We disagree. The filing of the motion to withdraw only signals counsel's desire to be released from his obligation to represent his client, and not that the attorney has actually ended the representation. Only the trial court by granting the motion can actually end the attorney's on-going obligations to the client. Roberts v. State , 705 S.W.2d 803, 805 (Tex.App.-Dallas 1986, no pet.) (noting that motion to withdraw which was never approved was ineffective to release attorney from obligation to represent defendant). And by having filed the notice of appeal in this case, the trial attorney was bound to represent Appellant through the appeal (unless released by the trial court or appellate court). Sampson v. State , 854 S.W.2d 659, 663 (Tex.App.-Dallas 1992, no pet.) (filing notice of appeals makes one attorney of record for the appeal); Roberts , 705 S.W.2d at 805 (discussing stages at which the trial court and appellate court have jurisdiction over a motion to withdraw). We accordingly ascribe no significance to the mere filing of a motion to withdraw with respect to the presumption that counsel was effectively representing Appellant until that motion was acted upon.
Moreover, the motion was not filed until the 29th day following pronouncement of the sentence. Even if on that day trial counsel decided to do nothing further, his inaction does not negate the twenty-nine previous days in which a motion for new trial could have been discussed and decided upon.
In his reply brief, Appellant alternatively contends that the rebuttable presumption from Oldham should be cabined to those cases following a trial on the merits, and not a guilty plea. Oldham addressed the presumption following a full adversarial trial. 977 S.W.2d at 355. Smith , however, *641 applied the presumption following a hearing to the trial court on revoking community supervision. 17 S.W.3d at 661. We view the distinction Appellant tries to draw as one without a difference. Appellant also questions the extent to which the presumption should extend, effectively claiming it might apply to some actions of trial counsel, but not others. We view the boundaries of the presumption as defined by the scope of a lawyer's duty to the client. Anything less would put courts on a course of arbitrarily applying the presumption with respect to some lawyer duties, but not others. A trial counsel's duty of fidelity equally applies to criminal defendants who plead guilty or choose trial. We accordingly apply the presumption to both classes of cases.
Nor do we find any possible error urged here as harmful. Denial of counsel during a critical phase is subject to a harm analysis. Cooks , 240 S.W.3d at 911, citing Satterwhite v. Texas , 486 U.S. 249, 257, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988) ; Tex.R.App.P. 44.2 (appellate court should reverse constitutional error unless it concludes "beyond a reasonable doubt that the error did not contribute to the conviction or punishment."). With respect to this particular claim, Appellant must allege on appeal a "facially plausible" claim that could have been asserted in the motion for new trial, and if so, the error is not harmless beyond a reasonable doubt. Cooks , 240 S.W.3d at 912, citing Prudhomme v. State , 28 S.W.3d 114, 120-21 (Tex.App.-Texarkana 2000, no pet.). Accordingly, we consider what Appellant claims should have been raised in a new trial motion, and whether the failure to do so prejudiced him.
A new trial motion might have asserted the disproportionate sentencing argument which we find was forfeited. See Delacruz v. State , 167 S.W.3d 904, 905 (Tex.App.-Texarkana 2005, no pet.) (disproportionality objection raised for first time in motion for new trial was sufficient). But we have also considered the substance of that argument and find it has no legs. Based on the arguments asserted in this appeal, the only other issue that a motion for new trial might have raised is the ineffective assistance of counsel claim. And to be sure, some aspects of that claim require additional record material to meet the Strickland standard.
The implausibility of Appellant's argument here, however, is the assumption that the attorney who is alleged to have provided ineffective assistance could have first recognized his claimed error in judgment, and then timely assembled through affidavits and transcripts the proofs necessary to document those supposed errors. That scenario is simply implausible. See Robinson v. State , 16 S.W.3d 808, 810 (Tex.Crim.App. 2000) ("Further, mounting an ineffective assistance attack in a motion for new trial is inherently unlikely if the trial counsel remains counsel during the time required to file such a motion."), quoting Ex parte Torre s, 943 S.W.2d 469, 475 (Tex.Crim.App. 1997) ; Eve Brensike Primus, Effective Trial Counsel After Martinez v. Ryan: Focusing on the Adequacy of State Procedures , 122 Yale L.J. 2604, 2619 (2013) ("Because an attorney cannot be expected to raise his own ineffectiveness, the first practical opportunity these defendants have to raise ineffective assistance of trial counsel is in initial collateral review proceedings."). Because it would have been implausible for Appellant's original counsel to have prepared and filed the extra-record type of evidence for an ineffective assistance claim as urged here by the new trial deadline, we also decline to find any prejudice in the failure to file a motion for new trial.
*642 Cumulative Error
Finally, Appellant argues the cumulative effect of his counsel's errors deprived him of effective assistance of counsel. The cumulative effect of trial court errors when aggregated in their effect can conceivably result in harm. See, Stahl v. State, 749 S.W.2d 826, 832 (Tex.Crim.App. 1988) (finding harm in the cumulative effect of outbursts and improper arguments). Nonetheless, we find the issues raised here were either not errors, or if they were, their cumulative effect still fails to require reversal. Accordingly, we overrule Issue Two.
ABANDONMENT OF CLIENT
In his final issue, Appellant repeats the claim that his attorney abandoned him at a critical stage by seeking to withdraw just before a motion for new trial was due. The only distinction between Issue Three and the identical claim he urges as a part of Issue Two, is that Issue Three asks us to abate the appeal and remand the case to the trial court so he can pursue an out of time motion for new trial. Because he fails to overcome the presumption that his trial counsel was still actively representing his interests until new counsel was appointed, however, he has not made the predicate showing necessary to require a remand. We overrule Issue Three and affirm the judgment of the trial court.
Hughes, J., not participating

The plea paperwork contains this somewhat cryptic notation: "14TDC or open." At the sentencing hearing, the State's attorney framed the prior recommendation thusly: "The last recommendation on this case was just under the original indictment plus the enhancement, which is 14 years. Because of that, the State would ask that the Court start at that 15-year mark, .... This is the sort of crime where the State would ask the Court to start with 15 years and start working their [sic] way up."

The trial court imposed the sentence on August 13, 2015. Any motion for new trial was required to be filed on Monday, September 14, 2015. See Tex.R.App.P. 21.4(a) (motion for new trial must be filed no later than 30 days after the trial court imposes the sentence in open court); Tex.R.App.P. 4.1(a) (when the 30th day falls on a weekend, or holiday, the deadline carries over to the next business day). The file stamp on the motion to withdraw indicates it was filed at 4:15pm on Friday, September 12, 2015.

This case was transferred from our sister court in Dallas pursuant to the Texas Supreme Court's docket equalization efforts. See Tex.Gov't Code Ann. § 73.001 (West 2013). We follow the precedents of the Dallas court to the extent they might conflict with our own. See Tex.R.App.P. 41.3.

Caso was thirty-six years old at the time of the sentencing hearing and Appellant was forty-nine.

Trial courts are often called upon to decide disputed facts and we generally apply a deferential review to those decisions. See Carmouche v. State , 10 S.W.3d 323, 327 (Tex.Crim.App. 2000) (in suppression hearing, deferring to the trial court's determination of historical facts that are supported by the record); Kelly v. State , 163 S.W.3d 722, 726 (Tex.Crim.App. 2005) (applying deferential standard to trial court resolution of fact issues in speedy trial act claims); Loserth v. State , 963 S.W.2d 770, 772 (Tex.Crim.App. 1998) (deferential standard for trial court's admission of in-court identification testimony); Carter v. State , 309 S.W.3d 31, 40 (Tex.Crim.App. 2010) (trial court's determination of issues surrounding voluntariness of confessions); Riley v. State , 378 S.W.3d 453, 457 (Tex.Crim.App. 2012) (rulings on motions for new trial are reviewed under abuse of discretion standard and when there are two permissible views of the evidence, the trial court's selection of one or the other will not be held as clearly erroneous).

A police report made a part of the appellate record notes that Caso is 5'8? and 160 pounds, while Appellant is 6'2? and 250 pounds.

Dropping the deadly weapon allegation did make Appellant at least eligible for community supervision, and reduce the minimum sentence from fifteen years to five years. Tex.Code Crim.Proc.Ann. art. 42.12, § 3g(a)(2) (West Supp. 2016)(use of a deadly weapon limits trial court's authority to place a defendant on community supervision); See Tex.Penal Code Ann. § 12.42(c)(1) (first degree felony following enhancement subject to minimum fifteen year sentence).

The following is the testimony of which Appellant now complains:
Q. When the police arrived, you tell them what happened?
A. My son and I. When the police said, no, the police got scared when he saw him. They checked him, and they gave him the first-first aid, and they couldn't believe what they were seeing.
Q. This is the police seeing your son?
A. Yes.
We also agree with the State that the trial court would not have abused its discretion in permitting this testimony under an exception to the hearsay rule, such as Tex.R.Evid. 803(1).