

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-25-00061-CR

———————————————————

DELMA MICHAEL HERNDON, Appellant

V.

THE STATE OF TEXAS

On Appeal from County Criminal Court No. 4
Denton County, Texas
Trial Court No. CR-2023-04492-D

Before Sudderth, C.J.; Kerr and Walker, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

A jury found Appellant Delma Michael Herndon guilty of theft with a value of $100 or more but less $750, a Class B misdemeanor, and assessed his punishment at 45 days' confinement in jail and a $750 fine. *See* Tex. Penal Code Ann. § 31.03(e)(2)(A). The jury further recommended that the judge suspend Herndon's sentence and place him on community supervision. In accordance with the jury verdict, the trial court signed the judgment on February 6, 2025, placing Herndon on community supervision. Herndon appealed. In one issue, he contends that the trial court deprived him of appellate counsel. While we recognize that the trial court tried to remove Herndon's appellate counsel, we hold that it failed and that at no point was Herndon without appellate representation. We thus overrule Herndon's sole issue.

## I. BACKGROUND

Because Herndon's issue focuses on whether he was deprived of appellate counsel, our background discussion focuses on the appointment and the attempted removal of his appellate attorney.

After Herndon's February 6 conviction, his appointed trial counsel filed a notice of appeal on February 27.[1] The next day, on February 28, the trial court

---

[1]By signing and filing the notice of appeal, Herndon's trial counsel technically became his appellate attorney of record. *See* Tex. R. App. P. 6.1(a); *Reyes v. State*, 557 S.W.3d 624, 640 (Tex. App.—El Paso 2017, pet. ref'd); *Shead v. State*, 697 S.W.2d 784, 785 n.2 (Tex. App.—Dallas 1985, no pet.) (per curiam).

appointed Stephen Wohr as Herndon's appellate counsel at 11:31 a.m., and a few hours later, at 2:41 p.m., in a separate order, it appointed J. Edward Niehaus.[2]

Thereafter, on March 3, Niehaus filed a notice of appeal and a request for the clerk's record and reporter's record. And on March 4, Niehaus filed a docketing statement in our court. Thus, despite any confusion, the record shows that Niehaus actively pursued the appeal on Herndon's behalf.

But on March 17, the trial court vacated its order appointing Niehaus. In its entirety, the order provides: "Edward Niehaus, previously appointed as defendant's attorney, is hereby released of all responsibilities as defendant's court-appointed attorney." On the same date, Niehaus filed in our court a motion to abate the appeal and to withdraw as counsel.

We abated the appeal on March 18 for the trial court to conduct a hearing regarding whether Herndon wanted to continue his appeal, whether he was indigent, and whether he wanted to proceed pro se. Complying with our abatement order, the trial court had two separate hearings, one on March 31 and the other on April 14, but on both occasions, Herndon did not appear. The trial court was thus not able to answer the questions that we posed in our abatement order. We automatically reinstated Herndon's appeal on receipt of the supplemental records of the March 31

---

[2]In Herndon's brief, he asserts that Wohr was unavailable, so the trial court appointed Niehaus. The record does not reflect why the trial court appointed two attorneys. There is no order removing Wohr as Herndon's appellate counsel. In the State's brief, it notes simply that Wohr has not participated in the appeal. We agree that other than Wohr's appointment, he does not appear in the record.

3

and April 14 hearings, and on April 24, 2025, we denied Niehaus's motion to withdraw. Niehaus thereafter filed an appellant's brief on Herndon's behalf.

## II. DISCUSSION

In one issue, Herndon argues that he was deprived of representation when the trial court vacated his counsel's appointment. Herndon argues that because no evidence showed that his financial situation had changed, the trial court erred by removing his appointed attorney. Herndon maintains that because the trial court had previously determined that he was indigent when it appointed trial counsel to represent him,[3] he is presumed to remain indigent unless there is a material change in his circumstances. *See* Tex. Code Crim. Proc. Ann. art. 26.04(p). Herndon contends that he was deprived of counsel during critical stages of the appellate proceeding.

The State concedes that the trial court erred by removing Herndon's appointed appellate attorney because no evidence supports the implied finding that Herndon's financial circumstances had materially changed.[4] *See id.* But the State denies that Herndon was without counsel or harmed in any way.

---

[3]The record does not contain an order appointing trial counsel, but it does contain trial counsel's request for payment, which reflects that trial counsel was appointed. The record also contains Herndon's claim of indigence and request for an appointed trial attorney and his affidavit of indigence supporting his request for an appointed trial attorney.

[4]The State's conceding error is not conclusive. *Larson v. State*, No. 02-19-00366-CR, 2021 WL 2460733, at *1 n.1 (Tex. App.—Fort Worth June 17, 2021, no pet.) (mem. op., not designated for publication).

4

## A. THE BASIS ON WHICH THE
## TRIAL COURT ATTEMPTED TO REMOVE COUNSEL

Both Herndon and the State assume that the basis of the trial court's order was the trial court's reassessment of Herndon's indigency. But whether reassessing Herndon's indigency was the basis of the March 17 order is not clear from its face. The order does not give a reason for removing Niehaus. And, we do not have a reporter's record of the March 17 hearing. Indigency was not the only possible basis for the order. The record also shows confusion over who represented Herndon on appeal—trial counsel, who had filed the first notice of appeal; Wohr, whom the trial court had appointed; or Niehaus, whom the trial court had also appointed. On its face, the March 17 order could reflect the trial court's attempt to clarify that issue.[5]

But for two reasons, based on our review of the record, we conclude that the purpose of the March 17 hearing was to reconsider Herndon's indigency status, not to clarify which of the three possible attorneys were authorized to pursue Herndon's appeal.

First, if the March 17 order's purpose was to clarify who represented Herndon, it failed. The March 17 order removes Niehaus but says nothing about Herndon's

---

[5]If the basis of the trial court's order was to clarify which attorney was representing Herndon on appeal—that is, if the trial court never questioned Herndon's indigency but recognized belatedly that it had erroneously appointed two appellate counsel to represent Herndon and wanted to vacate the second appointment with the intention that the attorney it first appointed (Wohr) should pursue Herndon's appeal—Herndon's argument that there is no evidence of a material change in his financial circumstances would fail because his indigency played no part in the trial court's order.

5

trial counsel, who was potentially representing Herndon based on his signing the first notice of appeal, or about Wohr, who was also potentially representing Herndon based on the trial court's first order appointing appellate counsel. By March 17, only Niehaus was actively pursuing Herndon's appeal, so at least among the attorneys, there did not appear to be any confusion about who was representing Herndon on appeal.

Second, although the order does not state the basis of the trial court's ruling and although we do not have a reporter's record of the March 17 hearing, Herndon asserts in his brief that the trial court had a non-evidentiary hearing on March 17. Statements made by Niehaus at the March 31 abatement hearing support Herndon's assertion that there was a hearing: "We had a prior hearing, Judge. You vacated my prior appointment." And statements made by the trial court at the March 31 abatement hearing support Herndon's assertion that although the hearing was not an evidentiary one, the trial court based its order on Herndon's indigence: "We have here Mr. Niehaus, who was formally appointed the lawyer for Mr. Herndon's appeal. But then I removed him and set it for a hearing on indigency, was the plan." Put another way, the trial court removed Niehaus on March 17 and planned to support that ruling with an evidentiary hearing at a later date.[6]

---

[6]In fairness to the trial court, it might have wanted Herndon to prove up his indigence before appointing appellate counsel. Herndon had not filed a postconviction affidavit of indigence. We note that when the trial court appointed Wohr and Niehaus on February 28, the form it used for the appointment of counsel

Accordingly, for the above two reasons, we conclude that the purpose of the March 17 hearing was to revisit the question of Herndon's indigency.

## B. WHETHER THE MARCH 17 ORDER HAD EVIDENTIARY SUPPORT

We review a trial court's indigency determination for an abuse of discretion. *Newman v. State*, 937 S.W.2d 1, 3 (Tex. Crim. App. 1996). A trial court abuses its discretion when no reasonable view of the record supports its ruling. *State v. Lerma*, 639 S.W.3d 63, 68 (Tex. Crim. App. 2021).

We hold that the trial court's March 17 order is erroneous because it has no evidentiary support. Article 26.04(p) provides that a defendant's indigency status can be changed if there is a material change in his circumstances. *See* Tex. Code Crim. Proc. Ann. art. 26.04(p). Showing a material change in circumstances would require evidentiary support.

Herndon, in his brief, asserts that the March 17 hearing was not evidentiary. The State, in its brief, concedes that the trial court's March 17 order has no evidentiary support. And the trial court's comment at the March 31 abatement

---

had two parts, one for the indigency finding and the other for the appointment of an attorney. Regarding indigence, the form provided the trial court with three options: indigence with reimbursement, indigence without reimbursement, and indigence by incarceration. For both Wohr and Niehaus, the trial court did not select any of the three. Thus, on the form itself, the trial court never expressly found that Herndon was indigent. By appointing counsel, however, the trial court implicitly found that he was. *See Alvarez v. State*, No. 13-23-00221-CR, 2024 WL 1665662, at *5 (Tex. App.—Corpus Christi–Edinburg Apr. 18, 2024, no pet.) (mem. op., not designated for publication) ("[O]nly an indigent defendant has the right to the *appointment* of counsel.").

hearing shows that it intended to rely on a later evidentiary hearing to support its March 17 ruling removing Niehaus as Herndon's counsel. A later evidentiary hearing would be unnecessary if the trial court had conducted an evidentiary hearing on March 17. We conclude that the March 17 hearing was non-evidentiary and, thus, that the trial court's March 17 order lacks any evidentiary support.

Because the trial court's ruling did not have any evidentiary support showing that Herndon's financial circumstances had materially changed, we hold that the trial court abused its discretion by removing counsel in its March 17 order. *See Alvarez*, 2024 WL 1665662, at *7 ("[W]e conclude that the trial court's implicit determinations that a material change in [the defendant's] financial circumstances occurred after the appointment of trial counsel . . . [was] not reasonably supported by the evidence."); *Barkley v. State*, No. 02-22-00081-CR, 2023 WL 2534465, at *8 (Tex. App.—Fort Worth Mar. 16, 2023, pet. ref'd) (mem. op., not designated for publication) (requiring some evidence to support the trial court's ruling).[7]

## C. No Harm

Herndon maintains that he was harmed by the trial court's March 17 order because he was without counsel during a critical stage of his appellate proceedings.

___

[7]In Herndon's brief, he asserts that the trial court erred by assessing attorney's fees against him in violation of Article 26.05(g) of the Texas Code of Criminal Procedure. From our review of the record, in the judgment, the trial court waived attorney's fees as authorized by Article 26.05(g). And nothing in the trial court's March 17 order contradicts that portion of the judgment.

We hold that because we denied Niehaus's motion to withdraw, Herndon was not without appellate counsel notwithstanding the trial court's order. Herndon thus cannot show harm based on any deprivation of counsel. And to the extent that the trial court created confusion over Niehaus's continued representation—essentially the period from March 17 (the date the trial court purported to remove Niehaus as Herndon's appellate counsel) until April 24 (the date we denied Niehaus's motion to withdraw)—we hold that the confusion was both addressed and resolved without any harm to Herndon.

The trial court appointed Niehaus on February 28, which was within the thirty days to file a motion for new trial.[8] *See* Tex. R. App. P. 21.4(a). And Niehaus promptly assumed responsibility for the appeal by filing his own notice of appeal and a request for the clerk's record and the reporter's record on March 3 and by filing the docketing statement in our court on March 4.[9] Although Niehaus did not file a

---

[8]Technically, because the trial court had not signed an order authorizing Herndon's trial counsel to withdraw, Herndon's trial counsel continued to represent Herndon from February 6 through February 28. *See Ward v. State*, 740 S.W.2d 794, 798 (Tex. Crim. App. 1987) ("[T]rial counsel remains as the defendant's counsel for all purposes until he is expressly permitted to withdraw, even if the appointment was for the trial only."); *see also* Tex. Code Crim. Proc. Ann. art. 26.04(j)(2) ("An attorney appointed under this article shall . . . represent the defendant until charges are dismissed, the defendant is acquitted, appeals are exhausted, or the attorney is permitted or ordered by the court to withdraw as counsel for the defendant after a finding of good cause is entered on the record . . . .").

[9]February 28, 2025, was a Friday. March 3, 2025, was the following Monday.

motion for new trial, he had the time to file one if he thought that it was necessary to do so.[10]

When the trial court signed the March 17 order removing Niehaus as Herndon's appellate counsel, nothing critical was occurring. Niehaus had not filed a motion for new trial, so the March 17 order could not have interfered with any hearing at that time. And, based on when the clerk's and reporter's records were filed, Herndon's appellate brief would not be due until June 26.[11]

And although the trial court had signed an order removing Niehaus as Herndon's appellate counsel, Niehaus was aware that we had not. Despite the trial court's order removing Niehaus, Niehaus proactively filed a motion to abate the appeal and to withdraw as counsel in our court on March 17.[12] Ultimately, on April 24, we denied Niehaus's motion to withdraw. From our perspective, Niehaus never stopped being Herndon's appellate attorney of record and, thus, Herndon was not deprived of counsel during the relevant period from March 17 until April 24.

[10]Thirty days from February 6 was Saturday, March 8, so Herndon had until Monday, March 10, to file a motion for new trial. *See* Tex. R. App. P. §§ 4.1(a), 21.4(a). A motion for new trial is necessary in limited circumstances. *See id.* § 21.2, 21.3.

[11]The clerk's record was filed on April 1, but the reporter's record was not filed until May 27, making Herndon's initial briefing due date June 26. *See id.* § 38.6(a).

[12]In another case in which the trial court attempted to remove a parent's appointed appellate counsel, we did not learn about the trial court's attempt until the parent filed a pro se petition for writ of mandamus. *See In re D.D.*, No. 02-25-00335-CV, 2025 WL 2177180, at *1 (Tex. App.—Fort Worth July 31, 2025, orig. proceeding) (mem. op.).

Whether the trial court would pay Niehaus for representing Herndon after the March 17 order was a separate issue. For our purposes, paid or unpaid, Niehaus remained Herndon's attorney of record.

We hold that Niehaus represented Herndon throughout the appeal, that the period from March 17 and April 24 was not a critical stage of the appellate process, and that the trial court's March 17 order did not harm Herndon. *See generally Cooks v. State*, 240 S.W.3d 906, 911–12 (Tex. Crim. App. 2007) ("We . . . decide . . . that this deprivation of counsel during the 30–day critical stage for filing a motion for new trial was harmless beyond a reasonable doubt.").

## III. CONCLUSION

Because Herndon had Niehaus as his appellate counsel throughout the appellate proceedings, the trial court's March 17 order did not harm him. Accordingly, we overrule his sole issue and affirm the trial court's judgment.[13]

---

[13]Given the confusion occasioned by the trial court's order removing appellate counsel, we note but do not address three other issues that such an order raises.

First, once a defendant is found indigent, Article 26.04(p) specifies how and by whom the indigency issue may be re-litigated: "If there is a material change in financial circumstances after a determination of indigency or nonindigency is made, the defendant, the defendant's counsel, or the attorney representing the state may move for reconsideration of the determination." Tex. Code Crim. Proc. Ann. art. 26.04(p). The trial court is not among those listed who have the authority to initiate a reconsideration of a defendant's indigency. *Compare id.* (limiting who may ask to have a defendant's indigency reconsidered), *with* Tex. Fam. Code Ann. § 107.013(e) (limiting who may ask to have a parent's indigency reconsidered). *See D.D.*, 2025 WL 2177180, at *3 ("We hold that the trial court abused its discretion because Section

11

/s/ Brian Walker

Brian Walker
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  October 9, 2025

---

107.013(e) does not authorize either the trial court or [the m]aternal [g]randmother to move to reconsider [the f]ather's indigency.").

Second, we question whether—without an abatement and remand by us authorizing the trial court to relitigate Herndon's indigency—the trial court's March 17 order interfered with our jurisdiction.  *See generally* Tex. R. App. P. 29.5 (stating in the context of an interlocutory appeal that the trial court "must not make an order that . . . interferes with or impairs the jurisdiction of the appellate court or effectiveness of any relief sought or that may be granted on appeal"); *D.D.*, 2025 WL 2177180, at *1 n.3.  By March 17, Niehaus was Herndon's appellate attorney of record.  Removing Niehaus would necessarily impact the appellate process.  We could not allow Herndon to proceed pro se without *Faretta* warnings.  *See Faretta v. California*, 422 U.S. 806, 835, 95 S. Ct. 2525, 2541 (1975); *Hubbard v. State*, 739 S.W.2d 341, 345 (Tex. Crim. App.1987).

And third, absent an abatement and remand by us, we question at what point the trial court's continuing jurisdiction to relitigate indigency, to appoint counsel, and to remove counsel ends.  *See Ramirez v. State*, 104 S.W.3d 549, 550 (Tex. Crim. App. 2003) ("[T]he trial court's general jurisdiction had expired upon the filing of the notice of appeal, and the trial court had authority to proceed only for limited purposes set out by law—in this instance, to determine whether the appellant was entitled to appointed counsel." (footnotes omitted)).  We, however, are not dealing with the appointment of counsel but with a later attempted removal of appointed counsel.  *See Whitehead v. State*, 130 S.W.3d 866, 874 n.34 (Tex. Crim. App. 2004) (questioning but not resolving when the trial court loses jurisdiction).

12